## GURLEY v. PILGRIM OIL CO.
### (No. 629–4489.)

(Commission of Appeals of Texas, Section B.
June 16, 1926.)

**1. Appeal and error ⟨⟩994(3), 1012(1).**

Supreme Court does not pass on preponderance of evidence or credibility of witnesses, but only on question whether there is any evidence in the record to sustain finding of lower court.

**2. Alteration of instruments ⟨⟩29—Testimony by lawyer drawing contract that contract was not changed after it was signed held some evidence sustaining finding that contract had not been altered after execution.**

Testimony by lawyer, drawing contract for drilling of oil well, that he had independent recollection of terms of contract as dictated by him, and that contract he read after it was signed by defendant had no such provision as inserted in contract produced by defendant at trial, *held* some evidence sustaining finding that original contract had not been changed after execution.

**3. Evidence ⟨⟩588.**

Testimony has probative force, even though witness does not speak with such certainty as to exclude all doubt in his mind.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by the Pilgrim Oil Company against J. M. Gurley. Judgment for plaintiff was affirmed by the Court of Civil Appeals (275 S. W. 295), and defendant brings error. Affirmed.

Houtchens & Clark, of Fort Worth, for plaintiff in error.

L. J. Wardlaw and J. T. Tuohy, both of Fort Worth, and Will A. Morriss, of San Antonio, for defendant in error.

POWELL, P. J. This case is stated fully by the Court of Civil Appeals. See 275 S. W. 295. It is unnecessary to repeat that statement here. The only question we are to determine is whether or not there is any evidence sustaining the judgments of both lower courts on a question of fact. Both courts held that the contract in question was signed as prepared by Brown, attorney for Carruth. If there is any evidence sustaining this finding, the judgments must be affirmed. That finding controls the case. There is no controversy about the law applicable to such a finding.

The nature of the controverted fact issue is stated by the Court of Civil Appeals in its opinion as follows:

"The appellant in the court below contended that the contract was originally drawn up by J. W. Carruth or his attorney, and that, when the appellant appeared in the office of the said

J. W. Carruth for the purpose of executing the contract, he objected to the provision providing that said casing was to be returned to J. W. Carruth, should the appellant fail to bring in a well producing oil or gas in paying quantities, and refused to sign same, and that, after discussing the same, it was agreed between the parties that said contract should be changed, and that the same was so changed, and made to read that the casing was to revert to the said J. W. Carruth only in the event appellant failed to dig said well to the depth of 3,500 feet. In other words, the appellee in the court below charged the appellant with fraudulently changing the terms of the contract, after the execution thereof."

In other words, was this change in Gurley's copy made before he signed it or did he change it after he signed it? The contract was signed in duplicate originals. Carruth kept a copy, as did Gurley. Carruth sold his assets to the Pilgrim Oil Company and turned his copy of the Gurley contract over to his assignee. This copy was lost, and its contents were proved by testimony of Hon. Marvin H. Brown of Fort Worth, attorney for Carruth, who drew the contract. Finally Gurley produced his copy of the contract at the latter part of the trial in court. It showed the provisions as he contended. But the changes had been made by erasing lines of typewriting and inserting other typewritten lines therein in lieu thereof. It would have been easy enough for this change to have been made at any time, either before or after the contract was originally executed.

[1, 2] Of course, the issue was sharply drawn. It is not for us to say where the preponderance of the testimony on this point lay. Nor do we pass upon the credibility of any of the witnesses. Our only inquiry is whether or not there was any evidence in the record to sustain the findings of the lower courts. We must find such evidence, if at all, from Brown's testimony. His evidence is found on pages 10–16, inclusive, of the statement of facts. The only way to properly and fairly interpret his testimony is to read it as a whole. Having done so, we find his statements entirely consistent and trustworthy. He dictated the contracts in the beginning. He kept one copy in his file, handing the two for execution to Carruth. The latter, in his office, had the copy signed. About two months later, Carruth returned his signed copy to Brown, who read the same at that time as signed. He testified he had an independent recollection of the contract as dictated by him; that it was not necessary to compare the signed contract with his file carbon copy. Having read the signed copy, he testified as follows:

"The contract that was given to me had absolutely no change in the world in it. It did not contain any such provision as the provision that is attached to the carbon copy that you now present to me."

We think one reason the Court of Civil Appeals had trouble at first in rendering its opinion was due to a misquotation of the statement of facts. That court, in its first opinion, quoted from the record to the effect that Brown testified he had no independent recollection of the "conditions" in the contract he had dictated. He did not so testify. On the contrary, he said he did have such a recollection of its terms, but not of its exact words. This makes a vast difference in the result. If he had really had no independent recollection of the terms of the contract, he could not have known whether the signed contract he read was the same as the one he had dictated unless he compared them, which he admitted he did not do.

It is true he states that he would not say he could not be mistaken in his testimony, but he did say he did not think he was mistaken. For instance, we quote from his testimony as follows:

"It is my recollection, and I don't think I could be mistaken about it that the original contract—the duplicate original—contained the same terms and conditions as it did when I wrote it. That is my recollection, and I don't think I could be mistaken about that."

[3] But testimony has a probative force, even though the witness does not speak with such certainty as to exclude all doubt in his mind. In this very connection, we quote as follows from Chief Justice Willie in the case of Davie v. Terrill, 63 Tex. 105:

"The testimony of the witness Williams, excluded by the court, we think was admissible as narrating circumstances tending to show that the order of sale under which the land in controversy was sold had been sent to the sheriff of Denton county. It is not necessary that a witness should have a positive or full recollection of the facts to which he testifies, or that he should speak with such certainty as to exclude all doubt in his mind. 1 Greenl. on Ev. § 440."

The evidence in the case at bar is more strongly probative than that of Williams in the case just cited. In the latter, the witness had no independent recollection of having sent the order of sale to the sheriff of Denton county. He testified from circumstances such as his custom in handling his law suits, including foreclosure sales, etc. A somewhat similar case is that of Railway Co. v. Crump, 102 Tex. 253, 115 S. W. 26.

With reference to the probative force of testimony of an attorney with reference to the contents of a paper he had prepared, we quote as follows from Corpus Juris, vol. 23, p. 36:

"The fair and impartial testimony of an experienced lawyer who drew the document and gave the transaction his careful personal attention is perhaps the strongest direct evidence that could be produced, particularly where the provisions of the instrument are simple, or the memory of the witness is refreshed by a memorandum. Testimony of an intelligent lawyer who read the instrument for a special purpose is also cogent evidence."

Brown read the signed copy carefully, for the reason, as he states, he had to know just what property was being conveyed to the Pilgrim Oil Company by Carruth. Since this was perhaps the most vital provision in the Gurley contract, it is not unreasonable to state that Brown certainly would have noted such a change if it had been made in the signed copy he was reading.

It seems that Gurley knew quite a while before the law suit that the Pilgrim Oil Company had lost its signed copy. The theory of the oil company is that Gurley felt he could safely change his copy, knowing the other had been lost. It seems that Gurley repeatedly refused to permit the company to inspect his copy of the original contract. Of course, it was the contention of Gurley, as some of the evidence showed, that he objected to the contract as written by Brown and had it changed before he ever signed it.

Being firmly convinced that there is some evidence in the record sustaining this controlling fact finding by the lower courts, we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.