PAN–AMERICAN LIFE INS. CO. v. AMER-
ICAN INDUSTRIAL INV. CO.

No. 11927.

Court of Civil Appeals of Texas. Galveston.

Dec. 11, 1947.

Rehearing Denied Jan. 8, 1948.

Vinson, Elkins, Weems & Francis, Fred R. Switzer and Frank G. Dyer, all of Houston, for Pan-American Life Ins. Co.

Andrews, Kurth, Campbell & Bradley, F. L. Andrews and Homer Mabry, all of Houston, for American Industrial Inv. Co.

GRAVES, Justice.

This appeal is from a judgment of the 61st District Court of Harris County, entered in part upon a jury's verdict in response to special-issues submitted, and in part upon independent findings of the court itself from the pleadings and evidence, in controlling substance, decreeing:

First, that the appellee recover upon the insurance policy of June 5, 1930, on the life of Julius Clarence Franklin, issued by appellant to appellee, as beneficiary, the principal sum therein specified as the face-value thereof, of $35,000, together with 12% penalty for delay, accrued interest to that date, and the further sum of $10,000 allowed by the court as attorney's fees, thereunder, totalling $61,550; second, denying the appellee any recovery under the "double-indemnity-rider" attached to such policy, providing—in controlling substance —that if the insured's death "occurred in consequence of bodily injuries effected solely through external, violent, and accidental means * * * independently of any other cause * * *, It is mutually agreed that this provision shall not cover * * * death resulting directly or indirectly from * * * bodily injuries inflicted intentionally by another person," it would pay an additional amount of $25,000.

In this court the appellant, that is, the insurance company, challenges the money-recovery so allowed against it on the one hand, while, on the other, it defends the court's denial of any recovery to the appellee on the "double-indemnity-rider";

Whereas the appellee, in turn, becoming a cross-appellant herein, reverses that position of the insurance company, by first defending such money-recovery in its favor against the appellant, and then challenging the trial court's failure to allow it to also recover—as beneficiary under the whole policy—the $25,000 so provided for in the "double-indemnity-rider."

While the cause is here upon a single transcript and statement-of-facts, and docketed as one appeal, it is, in fact, two, has been so briefed and orally argued, hence will be so disposed of by this Court.

The rival claims to the respective $35,-000 and $25,000 amounts, so called for by the terms of the policy, grew out of a dispute between the two parties under these two comprehensive issues: First, was the insured, J. C. Franklin, dead; second, if so, how did he die—was it in consequence of bodily injuries effected solely through external, violent, and accidental means, was it or not due to bodily injuries inflicted by himself, or was it due to injuries intentionally inflicted by another person or persons?

The appellant maintained that Franklin was not dead, but was still alive, hence no obligation of any sort had matured under its policy of insurance on his life; on the other hand, the appellee asserted that he was not only dead, but that his death had occurred on November 12th of 1941, and that it had been wholly due to the "accidental means" so described in the "double-indemnity-rider" attached to the policy itself, therefore both such contractual obligations had been matured against the appellant in its favor.

After an extended trial, heard upon a vast field of evidence, the jury, in response to the issues so submitted to it,

found that Mr. Franklin was dead; that he died, as alleged by the appellee, on November 12, 1941, but that it had neither been caused by "accidental means", nor "bodily injuries inflicted by himself", but, to quote the verbiage of the verdict, that "The death of Julius Clarence Franklin was due to injuries intentionally inflicted by another person or persons."

The controlling questions in this Court are, therefore, (1) whether or not these two overall findings, or either of them, were sufficiently supported by admissible evidence, and (2) whether there was reversible error in any other assigned respect.

This Court, after a painstaking review of the record, the arguments, both oral and written, and a plethora of briefs for both sides, is unable to hold that any such error has been made to appear.

■ On the contrary, its conclusion is that the trial court properly submitted the controlling fact-issues raised by both the pleadings and the proof to the jury—excepting only the findings properly reserved to itself, as indicated—and that the evidence sufficiently supported the jury's verdict upon them all, as the same has been in brief summarized, supra.

■ It follows, as night the day, that this intermediate and way-station tribunal is left with no authority to comply with the request of either party to exercise its exclusive prerogative in that respect, by declaring any one of the stated-findings of the trial court, or the jury, so against the overwhelming weight of the evidence as to require a reversal upon that account.

To return, therefore, to the main findings of the jury, (1) that the insured Franklin died on November 12th of 1941, (2) of injuries intentionally inflicted by another person or persons.

Appellant, in support of its claim that he was still alive, produced the testimony of two witnesses—Mrs. Kitty Trickey, and C. B. Dunn, both residents of Los Angeles, California, both testifying in person at the trial. Mrs. Trickey was a former resident of Houston, who testified that she had known Mr. Franklin well there prior to her removal to California, while Mr. Dunn was a taxi-driver at the time he testified about (in 1942), in the suburbs of Los Angeles; he saying he had driven a man around out there at least twice, whom he took to be the same man he had seen a picture of in the newspaper "American Weekly", a copy of which he had found in the cab of his car, that had an article about and a picture of the man he took to be Mr. Franklin. He testified that he woud say that the pictures shown him (in connection with the interrogatories he was answering) of J. C. Franklin were those of the same man.

While Mrs. Trickey testified to having at close range seen Mr. Franklin in Los Angeles, California, at the junction of two highways within the city, he being in an automobile alone going in one direction, and she in a streetcar going in another, while both vehicles were stopped for the intersection, and that she "knew it was him."

■ However, the jury heard all the details and the settings surrounding these two witnesses, when they so testified, and exercised what this court holds to have been its legitimate prerogative in finding that such testimony could not be accepted as indisputable, or even conclusive, proof that the insured J. C. Franklin was alive on the dates they testified to having seen the man they so took for him; but that, they—under the frailties that all humanity is heir to—could at least have been the victims of a case of mistaken identity.

■ At any rate, this court is constrained to hold that the jury—with very little, if any, positive and affirmative evidence, excepting such testimony of Mrs. Trickey and Mr. Dunn, even tending to rebut the case as made out by the great volume of testimony adduced by the appellee-Indemnity Company in substantiation of its claim that Franklin was dead, and had so died at the hands of some other person or persons, was not unsupported in so choosing between the two contentions.

To undertake a re-statement, or even a substantial resume, of the great volume of testimony adduced by the appellee in support of its declaration that Franklin had

so died on or about the 12th day of November, 1941, would be supererogatory; in lieu thereof, references will only be made to its outstanding features, to this general purport:

"The insured, J. C. Franklin, left home on the morning of November 12, 1941, and has not been seen nor heard from by his family. Franklin's automobile was found in the late afternoon of November 12, 1941, and the car was burning, the upholstery having been burned off and a human body was inside this burning car. Franklin's glasses, watch, key ring, stick-pin, belt buckle, and Catholic emblems were found in the car. * * *.

"When the body was removed from the burning car, it was in a badly burned condition so that identification could not be made in the ordinary way; and a detailed examination of these remains was made by Dr. H. H. Sweets, Jr., of the Department of Pathology of the University of Texas Medical School, at Galveston. * * *.

"Dr. Sweets testified that the cause of death was a massive hemorrhage into the lungs caused from an injury which penetrated both the aorta and the trachea; that death was quite sudden; that the body had not been dissected before the fire, nor had it been embalmed prior to the fire. He further testified that the body was dead before the fire started, and that it had been dead less than thirty minutes when enough heat reached the body to coagulate the blood. Dr. Sweets found among the remains portions of all parts of the body. * * *.

"Dr. E. G. Logan, the dentist who did Franklin's dental work testified that all of Franklin's natural teeth were extracted, except the two lower cuspids; that he had made for Franklin a complete upper plate and a lower plate which was built up on the two remaining natural cuspids and reinforced with a strengthening bar. * * * Dr. Logan definitely identified the artificial teeth from the mold number A-50, and 31-M, which appeared thereon and from the strengthening bar, as the teeth he used in making Franklin's dentures. * * *.

"Appellee introduced as plaintiff's Exhibit No. 52 an X-ray picture of Franklin's intestinal tract, showing certain of the bones in his pelvis and back, which was made during his lifetime in June, 1941, by Dr. R. K. McHenry. Dr. McHenry made an X-ray study of the remains in Galveston, and the best plate for purposes of comparison was introduced as Plaintiff's Exhibit No. 51."

Under such testimony, it seems clear to this Court that the jury's necessarily-implied finding that the human remains so found in Franklin's burning car were those of himself was a legitimate inference; if so, the appellant's sole defense against primary liability upon the policy fell.

But, inveighing against that inference, it insists that the identification was not shown, and especially questions not only the admissibility but also the probative value of the 2 X-ray pictures so designated as plaintiff's exhibits Nos. 52 and 51; insisting that they were not shown to have been properly made as such in the first place, and in the second, that the X-ray specialist, who took them, further changed his testimony in explaining them from having first admitted in effect that his technician, rather than he himself, had taken the picture of Franklin while living on June 5 of 1941, which was exhibit 52, and then later asserting that he himself had taken it instead, its boiled-down position upon that feature being thus stated in its brief: "it is our candid opinion that the testimony of a witness, who testifies directly opposite on a material question during the same trial, is not sufficient to support the verdict of a jury, as against the testimony of an unimpeached witness, as Kitty Trickey was, in this case."

No extended discussion of that position is deemed necessary, since, under what has been said, it must be held that all such matters went to the weight rather than to the admissibility of such testimony, hence it was the jury's exclusive province to resolve them.

The X-ray specialist had been shown by all legal requirements to be entitled to express his opinion upon the comparative value of the 2 X-ray pictures that had been so made in his office under his direction; the later picture, exhibit 51, was not offered as primary proof that those

remains were, in fact, those of Franklin, but it was distinctly shown to have been made by the specialist and to have been offered under his explanations thereof for purposes of comparison with the preceding picture that indisputably had been taken of Franklin himself in his lifetime. This Court holds that the two pictures were thus admissible, and that their value was a matter for the jury to determine. Authorities: 32 C.J.S., Evidence, § 712; Rickel v. Stockman, 111 N.J.L. 294, 168 A. 467; Greco v. Schmidt, 101 N.J.L. 554, 129 A. 146; Very v. Willi, Mo.App., 293 S.W. 500; Jones v. Sinsheimer, 107 Or. 491, 214 P. 375; Young v. Blain, Tex.Com.App., 245 S.W. 65; Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365; and Gurley v. Pilgrim Oil Co., Tex.Com.App., 285 S.W. 283.

■ Appellant's other major attack upon the judgment, presented through its third and fourth points-of-error, is its insistence that these paragraphs from the closing arguments of appellee's attorney at the trial, relating to appellant's witness Mrs. Trickey, were improper to the extent that they require a reversal, to wit:

"If she had remembered it it seems to me that this is something you would show without fail. Let's think a little bit about the circumstances under which she saw Mr. Franklin. She said she was sitting here in the street car; she is going down the street this way, and she said that street car stopped for a stop light, and she said Mr. Franklin's car, or the one that Franklin was in,—I admit she said she was very positive about Mr. Franklin—he stopped for the light in the right lane going in the same direction * * *"

"I am not going to say Mrs. Trickey said anything that she didn't honestly and sincerely believe. In the first place, I don't believe she agreed with the dates shown on the ledger sheet. It could not have been over seven or eight times she was up there, even if she went every time she was in Houston. She didn't remember anything about the thumb being missing. Of course Mr. Switzer said he knew about it all the time; well all he had to do was look at the insurance policy."

The gist of these two complaints is:

"Such misstatements by counsel in his closing argument were contrary to Kittie Trickey's testimony, in two respects:

"First, she did not testify the automobile in which she identified Franklin was in the right lane going in the same direction;

"Second, she did not testify that Franklin's automobile stopped at the same light as the street car in which she was riding."

These presentments are held to have involved no reversible error, in that, under their full settings, they cannot be properly held to have either caused or reasonably tended to cause the rendition of an improper judgment, for the primary reason that the trial court thus qualified the bills-of-exception:

"That immediately following the overruling of the objection, Mr. Andrews, in his argument to the jury, said:

" 'You can figure that out yourself, how you can sit on a street car stopped for a stop light, and have a car going in the opposite direction stopped for any kind of light, and still be as close as I am to Mr. Watkins. Is there any kind of logic in the fact that if she did know Franklin so well, is there any logic in her not speaking to him?' "

It thus appears that the attorney, in quick response to appellant's exception to his argument as first made, carefully took the sting out of his rejoinder by then conceding his slight error in first indicating that the street-car and auto had been going in the same direction, by re-applying his explanation to the point made in appellant's exception to that statement to their having been going in the opposite direction, as appellant insisted. Cite Rule 434, Texas Rules of Civil Procedure.

■ The appellee's claim, on its cross-appeal—that judgment below should have gone in its favor for the amounts specified in the "double-indemnity-rider", notwithstanding the jury's verdict—cannot be sustained. In the first place, the jury's adverse findings, as indicated, were upon sufficient evidence; in the next place, under the dis-

tinctive circumstances here involved, the burden rested upon it to prove not only that Franklin's death was caused solely by external, violent, and accidental means, independently of any other cause, but also that the death was not due to bodily-injuries intentionally inflicted by another, both of which duties it failed to meet. Jefferson Co. v. Clemmer, 4 Cir., 79 F.2d 724; Travelers' Ins. Co. v. Harris, Tex.Com.App., 212 S.W. 933; International Travelers' Association v. Bettis, 120 Tex. 67, 35 S.W.2d 1040, 1041; Great Southern v. Akins, Tex. Civ.App., 105 S.W.2d 902; International v. Marshall, 131 Tex. 258, 114 S.W.2d 851.

Under these decisions, especially those by our Supreme Court, it seems to be the rule in Texas that there is no presumption (such as the appellee grounds its double-indemnity claim upon) that the death was due to accidental means, where the policy provides that the plaintiff must establish that the death of the insured was caused by external, violent, and accidental means, except in instances where the defense is suicide.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.