RUTH W. BABIN, APPELLEE, v. COUNTY OF MADISON ET AL., APPELLANTS.

73 N. W. 2d 807

Filed December 30, 1955. No. 33832.

*James F. Brogan, Hutton & Hutton,* and *George W. Dittrick,* for appellants.

*Deutsch & Jewell,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff Ruth W. Babin brought this action against defendants County of Madison and its treasurer, together with other named subdivisions and their respective treasurers, seeking to enjoin them from collecting or attempting to collect a portion of the taxes levied and assessed for the years 1953 and 1954 against plaintiff's described real estate, a business property in Norfolk. Plaintiff's action was predicated upon the grounds that such portion of the taxes were void because unlawfully assessed upon an increased valuation: (1) Without notice to plaintiff as required by section 77-1315, R. S. Supp., 1953; and (2) after jurisdiction to increase the valuations had expired. The latter contention requires no further discussion in order to dispose of the case upon its merits.

Defendants filed separate essentially general demurrers to plaintiff's petition. After hearing thereon, each and all such demurrers were overruled, whereupon each and all defendants elected to stand upon their demurrers, and the trial court rendered a judgment for plaintiff. Therein it determined the amount of taxes actually due defendants, enjoined collection of that portion of the taxes based upon the increase of values made without notice to plaintiff upon the ground that such taxes were void, quieted her title against them, and ordered the

county treasurer to receive the amount of taxes due based on the 1952 valuation, and to correct her records accordingly. Therefrom defendants appealed to this court, assigning that the trial court erred in overruling their demurrers and finding that plaintiff's petition stated a cause of action, and that the judgment was contrary to law. We conclude that the assignments should not be sustained.

The sole question presented here is whether or not plaintiff's petition as amended by stipulation stated a cause of action for injunctive relief. In that regard: "A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact." Further, "In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof, if the allegations stated therein either aid the petition in stating a cause of action or charge facts going to avoid liability on the part of the defendant." Cacek v. Munson, 160 Neb. 187, 69 N. W. 2d 692.

Plaintiff's petition was voluminous, with numerous exhibits attached thereto and made a part thereof. Summarized, it alleged the several corporate or representative capacities of each defendant and plaintiff's ownership of the described property. Plaintiff then factually alleged in substance as follows: During the tax years of 1950 to 1952, inclusive, plaintiff's land was valued at $18,330, and her improvements were valued at $32,000, or a total actual and assessed value of $50,330. A photostatic copy of the "Assessment Record" thereof was attached to and made a part of plaintiff's petition.

As a matter of practice and custom, the assessor used a form for a loose-leaf book called "Real Estate Assessment Record 1950-1951-1952-1953-1954," containing a "master list" for the 1950 tax year, showing the description and reflecting the value of the lands, the improvements, and the total value thereof for 1950, and that

such 1950 valuation was used each year thereafter as the valuation for each succeeding year, unless changed by the assessor. Such "master list" sets forth the foregoing values of plaintiff's property.

Such "master list" was used to reflect the valuation of plaintiff's property by the county assessor for 1952 and for 1953 on and prior to March 10, 1953. On or before the third Monday of May 1953, the valuation so made and reflected was filed with the county clerk by the county assessor.

However, during the month of August 1953, the county assessor struck a pencil line through the $18,330 valuation of plaintiff's land and substituted therefor $31,890 as the valuation thereof. He also struck a pencil line through the $32,000 valuation of plaintiff's improvements and substituted therefor $55,680 as the valuation thereof. Further, he struck a pencil line through the total actual valuation of $50,330 and substituted therefor $87,570, which was intended by him to reflect the assessed value, i. e., 50 percent of the total actual value of plaintiff's property. As a result, the total actual value of plaintiff's property was increased from $50,330 to $175,140. A photostatic copy of such list for the years 1950 to 1954, inclusive, as it then existed, was attached to and made a part of plaintiff's petition.

On August 26, 27, or 28, 1953, the county board of equalization pretended to equalize the value of plaintiff's property and to make all levies for taxes based on such increased valuation.

On or about August 25, 1953, the county assessor sent a post card to plaintiff at Norfolk pretending to advise and inform her of such increases in valuation. However, plaintiff never was a resident of Norfolk but at all times involved was a resident of Cleveland, Ohio, all of which was well known by all officers of the county, and plaintiff never received said post card and never had any notice or knowledge of any such attempted increase in either the actual value or the assessed value of her

property, and the county board of equalization, without notice to or knowledge of plaintiff with regard to their action or the action of the county assessor, and without authority of law, levied all taxes for 1953 and 1954 based upon such increased values, to wit: An assessed value of $87,570 and an actual value of $175,140.

The combined and consolidated levy for all purposes upon plaintiff's property was 63.8 mills for 1952, 50.0 mills for 1953, and 55.2 mills for 1954. Further, for the 1954 tax year the county assessor placed an assessed valuation of $78,810 and a total actual valuation of $157,620 on plaintiff's property without any notice whatsoever to and without any knowledge of plaintiff. Such change from the 1953 valuation was based solely upon a uniform percentage change made by the county assessor in the valuation of all real estate in the city of Norfolk.

No improvements had been made upon plaintiff's property, and plaintiff alleged that the increased valuations aforesaid were unlawful; and that the assessed value of her property for 1953 and 1954 should have been $25,165, resulting in a tax of $1,258.25 for 1953, and a tax of $1,389.11 for 1954, which sums, together with interest thereon as provided by law, plaintiff tendered to defendant county treasurer, but such payments were declined by such treasurer in writing.

Plaintiff further alleged that defendants were attempting to collect taxes for 1953 and 1954 based on such increased valuations and thereby cast a cloud on plaintiff's title and take her property without due process of law; that she had no adequate remedy at law; and that defendants should be enjoined. She prayed for an injunction restraining defendants and each of them from collecting or attempting to collect so much of the taxes assessed against her property as were assessed and levied upon the increased valuations aforesaid; that such excess taxes should be adjudged illegal, null, and void; that defendant county treasurer should be required to

receive the amount of taxes based upon valuations for the year 1952 in payment of her taxes and cancel any and all the balance of such alleged taxes; and for general equitable relief.

By stipulation, other facts with relation to actions taken and final orders made by the State Board of Equalization and Assessment in June of 1952, 1953, and 1954, were attached to and made a part of plaintiff's petition. However, under circumstances presented here, they have no application or controlling force with relation to the vital issues presented by plaintiff's petition and defendants' demurrers. In that regard, none of such actions taken by the State Board of Equalization and Assessment ordered any percentage increase in Madison County valuations for the years 1952, 1953, or 1954, which could be binding upon plaintiff, as was the situation in Homan v. Board of Equalization, 141 Neb. 400, 3 N. W. 2d 650, wherein plaintiff had appealed to the district court from the valuation fixed by the county board of equalization for tax purposes, and the county board of equalization had appealed therefrom to this court.

Herein, defendants contend that the State Board of Equalization and Assessment fixed the valuations of plaintiff's property because it approved the county assessor's abstracts showing the total actual valuation of all lands, lots, and improvements in Madison County for 1952 and 1953, and ordered same reduced 10 percent in 1954. Such contention has no merit.

In that connection, we said in Homan v. Board of Equalization, *supra:* "It is urged that the action of the state board of equalization fixes the valuations of the property involved for tax purposes and that a failure to appeal from such order makes the actual value fixed by the state board of equalization final for all purposes. With this we cannot agree. In Hacker v. Howe, 72 Neb. 385, 101 N. W. 255, this court said: 'The state board does not deal with individual assessments but with the property of a county as a whole, and if it appears to them

to be assessed at a valuation relatively lower or higher than the property in all other counties, the whole is affected by the order of equalization, and not the different items or classes.'" Therein we also held: "Individual discrepancies and inequalities must be corrected and equalized by the county board of equalization. The duties of the state board of equalization are unrelated thereto and have no direct relationship to the duties of a county board of equalization." Also, contrary to defendants' contention, plaintiff's property did not come within any classification of omitted property. Radium Hospital v. Greenleaf, 118 Neb. 136, 223 N. W. 667.

Defendants argued that the remedy of injunction was not available to enjoin the collection of any tax or any part thereof, except such tax or the part thereof enjoined in case of injunction is levied or assessed for an illegal or unauthorized purpose. In so arguing, defendants relied upon sections 77-1727 to 77-1736, R. R. S. 1943, and numerous authorities from this jurisdiction which generally were concerned with voidable as distinguished from void taxes, or are distinguishable upon the facts and applicable law. In other words, defendants argued that a failure to give notice to the owner of real estate of an increase in valuation of his real estate for tax purposes in the manner required by section 77-1315, R. S. Supp., 1953, was simply an irregularity from which a voidable tax resulted. Such is not the law in this jurisdiction.

Section 77-1315, R. S. Supp., 1953, now provides: "The county assessor or county clerk where he is ex officio county assessor shall complete his revision of the assessment rolls, schedules, lists, and returns and file them with the county clerk on or before the third Monday in May of each year. The county assessor shall before such filing, notify the record owner of every piece of real estate which has been valued at a higher figure than at the last previous assessment. Such notice may be given by post card, addressed to such owner's last-known

address. It shall describe said real estate, and state the old and new valuation thereof and the date of the convening of the board of equalization."

In Rosenbery v. Douglas County, 123 Neb. 803, 244 N. W. 398, this court first construed that part of such section providing for notice to the landowner of any increase in the assessed valuation of his real estate over the previous valuation thereof. It is a case comparable in every material respect with that at bar. After citing and quoting from numerous authorities from this and other jurisdictions, this court held: "The provision of section 77-1612, Comp. St. 1929, requiring notice to the landowner of any increase in assessed value of his realty over the last previous assessment is mandatory. A tax levied on such increase, made without notice to the owner, is void, and its collection may be enjoined." Section 77-1612, Comp. St. 1929, as amended in respects not important here, is now section 77-1315, R. S. Supp., 1953.

As recently as Gamboni v. County of Otoe, 159 Neb. 417, 67 N. W. 2d 489, this court, after citing and quoting with approval from numerous authorities from this and other jurisdictions, held: "If a tax or assessment is levied without authority of law, it is void.

"When taxes are levied on property without authority of law a court of equity may enjoin collection thereof.

"The provision of section 77-1315, R. R. S. 1943, requiring notice to the landowner of any increase in assessed value of his realty over the last previous assessment is mandatory. A tax levied on such increase, made without notice to the owner, is void.

"What has been said of the notice required by section 77-1315, R. R. S. 1943, being mandatory is equally applicable to what the Legislature has said shall be contained therein."

Such authorities aforesaid are applicable and controlling in the case at bar. We therefore conclude that plaintiff's petition did state a cause of action for injunctive relief; that defendants' several demurrers thereto were

properly overruled; and that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to the county of Madison.

AFFIRMED.