## CHRISTOPHER v. CITY OF EL PASO.
### No. 3387.

Court of Civil Appeals of Texas. El Paso.
Oct. 22, 1936.

Rehearing Denied Nov. 25, 1936.

Richard F. Burges, Robert L. Holliday, and Henry T. Moore, all of El Paso, for appellant.

J. Walker Morrow, City Atty., and Ernest Guinn, Asst. City Atty., both of El Paso, for appellee.

PELPHREY, Chief Justice.

During the year 1928, the City of El Paso began the operation of an airport with A. E. Johnson as its manager.

On May 1, 1933, a contract was entered into between Johnson and the City of El Paso relative to the running of the airport.

On December 3, 1933, there was an exhibition held at the airport consisting of stunt flying; a parachute jump; a demonstration of a student taking a correspondence course in flying; and the riding of a motorcycle through a burning fence.

After the motorcycle had passed through the burning fence, it ran into Ardell Christopher, a thirteen year old boy, who was standing near one of the hangars, with his father, appellant here.

It is undisputed that the boy was seriously injured, and we shall not, therefore, detail his injuries.

In the following April, this suit was filed against the City of El Paso alleging that it was negligent in failing to adopt rules and regulations for the protection of persons lawfully upon the flying field; that

its agents failed to take any precautions to protect the general public and Ardell Christopher from the motorcycle which struck him; that the dangers attached to the performance of the run through the burning fence were known to the city's agents, or should have been known by the use of ordinary care; and that the city's agents saw the position of persons present to see the exhibition, including Ardell Christopher, and realized the danger of performing the exhibition with them standing where they were and that some of them would probably be injured unless some precautions were taken to avoid such injury.

The City of El Paso answered by a general demurrer, a general denial, a special denial that it was operating the airport at the time in question, alleging that it had theretofore leased said airport to A. E. Johnson, impleading him, and prayed for judgment against him for any recovery had against it, and alleged that appellant and Ardell Christopher were guilty of contributory negligence barring recovery. Johnson answered by a general demurrer and a general denial.

By supplemental petition appellants demurred generally to the city's answer and excepted to its cross-action against Johnson, as being a misjoinder of parties and causes of action. Appellants further denied that any lease was executed by the city to A. E. Johnson, and charged that if any such lease had been attempted it was without proper compliance with the provisions of the charter of the City of El Paso and the laws of the state and therefore of no force or effect.

By trial amendment, appellants further alleged, in the alternative, that if they were mistaken in their allegations that the city and its agents staged the exhibition at which Ardell Christopher was injured, nevertheless they authorized and permitted it to be staged upon city property with full knowledge that it was inherently dangerous and that some person would probably be injured unless extraordinary precautions were taken, and that the city and its agents permitted the public, including Ardell Christopher, to come on the property, without taking any precautions whatsoever to protect them from the dangers inherent in such exhibition; and that the exhibition involving such unusual dangers constituted a nuisance, and that the city and its agents were negligent in permitting said nuisance upon its property and in permitting the public, including Ardell Christopher, to come upon the property into a place of danger.

In response to special issues the jury found that the conducting of the exhibition of driving a motorcycle through a burning fence was inherently dangerous to the spectators at such exhibition; that A. E. Johnson, manager of the airport, failed to adequately warn, or cause·to be adequately warned, the spectators, to seek positions of safety; that such failure was negligence and a proximate cause of the injuries complained of; that Johnson, before permitting the performance to proceed, failed to use ordinary care to ascertain, or cause to be ascertained, that the spectators were in positions of reasonable safety; that such failure was negligence and a proximate cause of the injuries; that it was negligence to fail to indicate by warning sign, railing, or rope the danger zone incident to the exhibition; that such negligence was a proximate cause of the injuries; that neither Ardell Christopher nor appellant was guilty of negligence in being in the position they were; that appellant was not warned to take precautions for his safety prior to the staging of the exhibition; that Ardell Christopher was not warned to take precautions for his safety prior to the staging of the exhibition; that appellant suffered damages as a result of the injuries to his minor son in the sum of $2,500; that $7,500 would reasonably compensate Ardell Christopher for his injuries; that those in charge of the exhibition failed to indicate by warning sign, rail, or rope, the danger zone incident to the exhibition; and that the injuries complained of were not the result of an unavoidable accident.

Upon motion the trial court rendered judgment non obstante veredicto in favor of the City of El Paso and in favor of A. E. Johnson on the city's cross-action against him. After their motion for new trial was overruled, appellants perfected this appeal.

### Opinion.

There are numerous questions presented by appellants, viz.: (1) Whether section 3 of article 1269h (Vernon's Ann.Civ.St.) relieves the city from liability; (2) whether operating an airport is a governmental or proprietary function; (3) whether Johnson was the agent of the city in operating the airport; (4) whether the negligent act complained of was within the scope of his employment, if he was the city's agent; (5) whether the defense of ultra vires was

available to the city; and (6) whether city could lease the airport and thereby relieve itself from liability.

The question of in what capacity the city was acting in the operation of the airport (if in fact it was operating it) not only might be decisive of the city's liability, but is certainly involved in several of the other questions presented.

Our Supreme Court, in reviewing the decisions in the question of proprietary and governmental functions, had the following to say in the early case of City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am.Rep. 517:

"The tendency of the decisions is evidently to recognize the liability of even quasi corporations to suit not expressly given by statute, when injury results from the negligence of officials or agents exercising powers purely ministerial in reference to matters which cannot be said to pertain to duties purely public; to matters which, though in a restricted sense are public, yet more directly affect the welfare and pecuniary interest of the inhabitants of the quasi corporation, upon whose will rests the determination whether the given act shall be performed and how it shall be performed, and upon whom rests solely the expense of the work put in operation by themselves, through which, at least indirectly, they receive benefit in which the general public, if at all, but slightly participates. * * *

"It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state,—they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be. * * *

"In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable."

In measuring the case at bar by the above-stated principles, a study of what other courts of this and other jurisdictions have said, will of course be helpful. In our own jurisdiction we find cases holding that the surfacing and grading of streets; the clearing of streets of weeds, brush, and small trees, and burning the brush; construction and maintenance of sidewalks; cleaning streets and collecting and disposing of garbage; construction and maintenance of storm sewers; construction and maintenance of waterworks system; maintenance and operation of a street railway; operation of an electric light plant; maintenance and operation of parks; maintenance and operation of zoo; operation of swimming pool and water slide; and maintenance and operation of wharves—were proprietary enterprises and cities were subject to the same liability in their maintenance and operation as others engaged in like enterprises.

In other jurisdictions we find some decisions on the operation of airports, viz.: Coleman v. City of Oakland, 110 Cal. App. 715, 295 P. 59, 60; Mollencop v. City of Salem, 139 Or. 137, 8 P.(2d) 783, 83 A. L.R. 315; City of Mobile v. Lartigue, 23 Ala.App. 479, 27 So. 257—all holding that in the conduct of an airport a municipality acts in a proprietary capacity.

In the Coleman Case the California court cited the following from City of Kokomo v. Loy, 185 Ind. 18, 112 N.E. 994:

"Under the theory of the common law, that the municipality is protected from liability only while exercising the delegated functions of sovereignty, the governmental powers of a city are those pertaining to the making and enforcing of police regulations, to prevent crime, to preserve the public health, to prevent fires, the caring for the poor, and the education of the young. * * *

"But it is of course true that modern cities and towns enter upon many forms of activity, operate utilities for the benefit of the inhabitants, and provide many means for the easing or improving of the condition of the people that were never dreamed of at common law. Nevertheless the uniform holding as to all such activities on principles manifestly just to the people themselves is that no matter how beneficial they may be in a general sense to the inhabitants of the municipality, unless they

are governmental in their essence, the municipality's conduct in managing them is controlled by the same rules of liability that apply to an individual. * * *"

Especially pertinent to the case at bar are the decisions holding that the operation of wharves is the discharge of a proprietary function, for as said by the Supreme Court of Missouri in Dysart v. St. Louis, 321 Mo. 514, 11 S.W.(2d) 1045, 1049, 62 A.L.R. 762: "An airport with its beacons, landing fields, runways, and hangars is analogous to a harbor with its lights, wharves and docks; the one is the landing place and haven of ships that navigate the water, the other of those that navigate the air."

■ That municipal corporations are liable for their negligence in the operation of wharves, see 43 C.J. § 1942, p. 1175. From these authorities, we have concluded that the operation of the airport in this case was a proprietary function and that the city was liable for the negligence of its agent in such operation the same as other private corporations would have been. We agree with appellee that a determination of whether a city is acting in a governmental or proprietary capacity depends, in a measure, upon the facts of the particular case; but we cannot agree that the Legislature in granting the power to incorporated cities in Texas to own and operate airports made the exercise of such power a governmental function.

The operation of the airport being the exercise of a proprietary function, we next approach the question of the constitutionality of the provisions of article 1269h, § 3, purporting to exempt cities from liability for injuries to persons caused by the negligence or want of skill or care of their agents in such operation.

The provision is attacked by appellants on the ground that the caption of the act does not include the exemption feature as one of its purposes and violates the due process clauses of both the Federal and State Constitutions (Const.U.S.Amend. 14, § 1; Const.Tex. art. 1, § 19).

■ The first objection is, we think, without merit. 39 Tex.Jur. § 41, p. 89; Tuttle et al. v. Wood et al. (Tex.Civ.App.) 35 S.W.(2d) 1061 (writ refused).

Appellant's second objection to the exemption provision is that it violates section 1, article 14, of the Amendments to the Federal Constitution, and sections 3, 13, and 19 of article 1, and section 26 of article 16, of the Texas Constitution.

■ With a full appreciation of the rule that every presumption is in favor of the validity of the acts of our Legislature, we nevertheless must hold the provision here subject to the attacks made upon it. As was said by the Galveston Court of Civil Appeals in Reegan v. City of Galveston, 24 S.W. (2d) 61, 64: "The power of the Legislature to authorize a municipal government to exempt itself from liability for injury caused by its negligence can only be exercised as to matters of local self-government and police regulation."

That such a statute contravenes the equal protection clause of the Fourteenth Amendment to our Federal Constitution, see Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 245, 73 L.Ed. 483; Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264; Lossing v. Hughes (Tex.Civ.App.) 244 S.W. 556.

That the provision violates the due process clause of our own Constitution, see Beaumont Traction Company v. State, 57 Tex.Civ.App. 605, 122 S.W. 615; City of Wichita Falls v. Lipscomb (Tex.Civ.App.) 50 S.W.(2d) 867 (writ refused); City of Amarillo v. Tutor (Tex.Com.App.) 267 S. W. 697.

■ We do not concur in the contention that the invalidity of the exemption provision, in the absence of a saving clause, renders the entire act unconstitutional. While it is true that the provision is incidental to the main purpose of the act, yet it is capable of being separated from the act without materially affecting that main purpose.

The city defended the suit on the ground that it had leased the airport to Mr. Johnson, who had theretofore managed it for them, and had no control over it at the time of the injury to Ardell Christopher.

Appellants here contend that the facts are sufficient to show that Johnson was acting as the agent of the city rather than as an independent contractor or lessee, as a matter of law, on the date of the injuries complained of.

We have carefully studied the evidence and the arguments of appellant based thereon, and cannot agree with such contention. The evidence, if it does not show as a matter of law that the city had parted with the control over the airport, at least raises an issue as to the capacity in which Johnson was acting on the day in question.

■ Appellants requested the submission of no issues on the question and will be held to have thereby waived a finding thereon.

■ The general rules as to the validity or illegality of the contracts of private corporations, in so far as applicable, may be invoked in determining the validity or legality of municipal contracts. 44 C.J. § 2220, p. 120. And the rule is well settled that strangers cannot question the want of power of a corporation. 14a C.J. § 2182, p. 337. We do not intend to hold that a taxpayer could not enjoin the making or carrying out of an ultra vires contract, by a municipality, but we can find no authority for even a taxpayer's collateral attack upon the city's contract as is being attempted in this case.

■ We are further of the opinion that the city would not be liable merely as the owner of the property upon which the exhibition was held. The dangerous condition which caused the injury here complained of did not exist at the time of the lease to Johnson, and the establishment of such a condition is not shown to have been contemplated by the contract.

■ To render a municipal corporation liable for acts of its agents, it must be made to appear that the acts were expressly authorized by the municipal government or that they were done bona fide in pursuance of a general authority to act for the municipality on the subject to which they relate. 43 C.J. § 1719, p. 942. This proof appellants have failed to make in the case at bar.

Finding no reversible error in the record as made, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellants have filed a very able motion attacking practically all of our holdings in the original opinion.

We shall not attempt to discuss any of their assignments except those relating to the question of whether Johnson, at the time of the accident, was acting as the agent of the city and as to the correctness of the trial court's action in rendering judgment non obstante veredicto.

Appellants contended on the former hearing that the facts in evidence were sufficient to show that Johnson was acting as the agent of the city, as a matter of law. We disagreed with such contention and held that if the evidence did not show as a matter of law that the city had parted with control of the airport that, at least, it raised an issue as to the capacity in which Johnson was acting on the date of the accident.

In their motion appellants now assert that if, as we suggested, the evidence raised a fact issue on the question of Johnson's agency, then the trial court was in error in rendering judgment non obstante veredicto.

■ In view of the rule that judgments non obstante should only be rendered in cases where the court would have been justified in instructing a verdict, we must agree with this latter contention. Duvall v. Kansas City Life Ins. Co. (Tex.Civ.App.) 96 S.W.(2d) 793; Amarillo Transfer & Storage Co. v. De Shong (Tex.Civ.App.) 82 S.W.(2d) 381; article 2211, Revised Statutes, as amended Acts 42d Leg. p. 119, c. 77, § 1 (Vernon's Ann.Civ.St. art. 2211).

It follows that in disposing of the latter question we will be obliged to determine whether the evidence shows Johnson to be the agent of the city, as a matter of law, or whether it raises an issue of fact as to the capacity in which Johnson was acting on the day in question.

■ Upon the question of agency appellants take the position that under article 1269h (Vernon's Ann.Civ.St.), and section 71 of the City Charter, the city was bound to retain control and management of the airport and to perform the duties imposed by the statute. While it is true that both the statute and charter provide that the airport shall be under the management and control of the governing body of the city and that the city shall have the management and control of the property belonging to it, we find nothing in either the statute or the charter which would in any way prohibit the leasing of the property acquired for airport purposes, and it is our opinion that the cited provisions can have no bearing upon the question involved.

■ Nor can we agree that the fact that the ordinance passed by the city in 1929 had not been expressly repealed should control as to the question here presented. At most, it could only raise a presumption that the city had not parted with control of the airport, which presumption would disappear before the positive testimony of the mayor that he, as such, had no control over it.

Another contention seriously urged by appellants on the former hearing, and re-asserted here in this motion, is that the evidence showing that Johnson had at one time been manager of the airport and in the employ of the city as such and that he was still managing it, the presumption arises that he was still the agent of the city.

This presumption cannot be indulged under the facts before us.

■■■ Presumptions are based upon some necessity, and in the absence of such necessity they will not be indulged, and courts will not go into the domain of presumptions where direct proof can be obtained. 22 C.J. § 25, p. 83; Skov v. Coffin (Tex.Civ. App.) 137 S.W. 450 (writ refused).

■■■ In the present case both the mayor and Mr. Johnson were called to testify by appellants, and certainly they cannot now depend upon presumptions to make out their case, when they had before them the two men who must have been in possession of all the facts relative to the status of Johnson at the time in question.

■■■ Appellants further contend that if the question of Johnson's agency was not one of law, then the fact that both Johnson and the mayor were interested parties would make the question one of fact because of their interest. This rule might be applicable here except for the fact that appellants' called both Johnson and the mayor and made them their witnesses. As said by Justice Hall of the Amarillo Court in the case of Starkey v. H. O. Wooten Grocery Co. (Tex.Civ.App.) 143 S.W. 692, 694: "A party upon whom it is incumbent to prove an alleged fact cannot call his adversary as a witness to that fact, elicit testimony from him to the effect such fact has no existence, and then call upon the jury to discredit the evidence of such adversary, merely because he is interested as a party."

See, also, Gurley v. Pilgrim Oil Co. (Tex. Civ.App.) 275 S.W. 295, affirmed (Tex. Com.App.) 285 S.W. 283.

Appellants also attack the testimony of Johnson and the mayor as being mere conclusions, and therefore deserving no consideration.

In response to questions of counsel for appellants and on his direct examination, Mr. Johnson testified that he had been carrying passengers for hire at the airport since he leased it on May 1, 1933; that under his contract with the city, the trus-ties from the city jail assisted in cleaning the airport; that in 1930 an ordinance was passed governing the airport; that a majority of the rules adopted were passed to comply with rules of the Department of Commerce; and that he had (with the consent of the council) changed the schedule of charges for storage adopted at that time. On cross-examination he further testified that he managed the airport on a salary prior to May 1, 1933; that he had received no salary since that time; that after May 1, 1933, he returned no money to the city and paid it nothing; that since May 1, 1933, his only connection with the city had been as lessee of the airport; and that after he paid the upkeep and lights and so forth, the remainder of the money belonged to him.

Mayor Sherman testified that from the date of the lease Mr. Johnson had no other connection with the city as an employee, or servant or agent; that he was not on the pay roll after that time; that Mr. Johnson was not employed by the city at the time of the accident to the Christopher boy; that at that time he was exercising no control over the airport; that when the city because of the depression found that it would be unable to continue the operation of the airport, Johnson agreed to operate it for what he could get out of it; that the rating of the airport was changed in order that fewer lights could be used; and that Johnson has paid all the expenses of the airport since the lease.

While some of the statements of these witnesses may be conclusions, yet their testimony as a whole leads to the irresistible conclusion that a change in the relationship between the city and Johnson occurred on May 1, 1931, and such change being shown, no presumption of agency arises from the fact that Johnson remained in charge.

■■■ To constitute the relation of master and servant for the purpose of fixing liability on the former for acts of the latter under the doctrine of respondeat superior, it is indispensable that the person sought to be charged shall have the power and the duty to control the alleged servant while in his employ, that is, have the right to say not only what shall be done, but how it shall be done. 39 C.J. § 4, p. 35; and § 1454, pp. 1269, 1270.

■■■ Under this rule the evidence of the mayor that he had no control of the

airport since the lease was executed would certainly be admissible.

From a careful reading of the entire statement of facts, we have reached the conclusion that appellants failed to establish the agency of Johnson, as a matter of law, or to present evidence raising an issue on that question.

In view of the conclusion, we adhere to our former holding and overrule the motion.