**IMPERIAL PRODUCTION CORP. et al.**

v.

**CITY OF SWEETWATER.**

No. 14513.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1954.

W. B. Patterson, Robertson, Jackson, Payne, Lancaster & Walker, Dallas, Tex., for appellants.

Charles R. Griggs, Nunn, Griggs & Sheridan, Sweetwater, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Imperial Production Corporation and Nottingham sued the City of Sweetwa-

ter, Texas for damages for the destruction of their airplanes by fire allegedly as the proximate result of negligence on the part of the agents, servants or employees of the City. The City owned and operated an airport in connection with which it rented to the Corporation and to Nottingham space in a hangar for storage of their airplanes and other equipment. On March 20, 1951, the hangar and the airplanes and belongings stored therein were consumed by fire. The district court sustained the City's motion to dismiss on the ground that the City is exempt from liability for its negligence by virtue of having adopted the Municipal Airport Act of the State of Texas, Article 46d, Sections 1 through 22, Revised Civil Statutes of Texas, Vernon's Ann.Civ.St.[1] This appeal followed.

■ In determining the liability of a municipal corporation for tort, the Texas courts recognize the distinction generally prevailing based on the nature of the act or function as governmental or proprietary, City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, 261; 38 Am.Jur., Municipal Corporations, Sec. 572. The Texas Supreme Court said in the case just cited:

"The underlying test is whether the act performed by a city is public in its nature and performed as the agent of the State in furtherance of general law for the interest of the public at large, or whether it is performed primarily for the benefit of those within the corporate limits of the municipality." City of Houston v. Quinones, supra, 177 S.W.2d at page 261.

The position of appellants is based upon four arguments: First, that, in the absence of any state statute, a city acts in a proprietary capacity in operating an airport;[2] second, that Article 46d–15 (footnote 1, supra) was not intended by the legislature to exempt a municipality from liability for negligence in operating an airport; third, alternatively, that the statute does not include a business venture such as renting storage space; and, fourth, further alternatively, if the statute so exempts the municipality, it is unconstitutional. The appellee concedes appellants' first point, that, in the absence of any state statute, the operation of an airport is a proprietary act of a municipality.

The appellants elaborate their second point by urging that the effect of the

---

1. The part of the Act most pertinent was enacted in 1947.
   "Art. 46d–15. Public purpose, county and municipal purpose
   "The acquisition of any land or interest therein pursuant to this Act, the planning, acquisition, establishing, development, construction, improvement, maintenance, equipment, operation, regulation, protection and policing of airports and air navigation facilities, including the acquisition or elimination of airport hazards, and the exercise of any other powers herein granted to municipalities and other public agencies, to be severally or jointly exercised, are hereby declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity; and in the case of any county, are declared to be county functions and purposes as well as public and governmental; and in the case of any municipality other than a county, are declared to be municipal functions and purposes as well as public and govern-

mental. All land and other property and privileges acquired and used by or on behalf of any municipality or other public agency in the manner and for the purposes enumerated in this Act shall and are hereby declared to be acquired and used for public and governmental purposes and as a matter of public necessity, and, in the case of a county or municipality, for county or municipal purposes, respectively. Acts 1947, 50th Leg., p. 190, ch. 114, § 15."

2. The appellants cite the following authorities: Christopher v. City of El Paso, Tex.Civ.App., 98 S.W.2d 394; Moore v. City of Beaumont, Tex.Civ.App., 195 S. W.2d 968, affirmed 146 Tex. 46, 202 S. W.2d 448; 18 McQuillin, "Municipal Corporations", 3rd Ed., Sec. 53.96; 6 Am. Jur., Aviation, Sec. 27; City of Blackwell v. Lee, 178 Okl. 338, 62 P.2d 1219. A recent case by this Court might be added, Indamer Corporation v. Crandon, 5 Cir., 196 F.2d 5.

statute is to declare the City's operation of an airport to be governmental only insofar as material for taxation, condemnation, appropriation, bonded indebtedness, the authority of public officers, etc., but not in such sense as to free the City from tort liability.[3] The North Carolina case of Rhodes v. City of Ashville cited by appellants (footnote 3, supra) furnishes strong support for their position and, we think, should be followed if the legislative and judicial history of Texas were similar to that of North Carolina at the time the respective acts were passed. Appellee points out, however, that the appellants' position becomes untenable in the light of the existing law in Texas when Article 46d–15 was enacted.

The original airport legislation in Texas was enacted in 1929 and amended in 1941 and 1947.[4] In 1936 a Texas Court of Civil Appeals in Christopher v. City of El Paso, 98 S.W.2d 394, held Section 3 of the Act to be violative of the Equal Protection Clause of the Four-teenth Amendment and the Due Process Clause of the Texas State Constitution, Vernon's Ann.St. art. 1, § 19. That holding, however, was predicated upon the operation of the airport being a proprietary function, and the Court said: "* * * we cannot agree that the Legislature in granting the power to incorporated cities in Texas to own and operate airports made the exercise of such power a governmental function." Christopher v. City of El Paso, supra, 98 S.W.2d at page 398. The Texas Court expressly determined that the remainder of the Act was unaffected by its decision. After that decision, therefore, Article 1269h of the Revised Civil Statutes, Vernon's Ann.Civ.St. (footnote 4, supra) still furnished authority to municipalities to acquire land for airports, to condemn land for that purpose, to maintain and operate airports, to issue bonds and levy taxes to that end, and to do all things necessary to the accomplishment of the statutory purpose.

3. The appellants cite Annotation 161 A. L.R. 733 on "Power to Establish or Maintain Public Airport"; Moore v. Gordon, Tex.Civ.App., 122 S.W.2d 239; and Rhodes v. City of Ashville, 230 N.C. 134, 52 S.E.2d 371.

4. Sections 1, 2 and 3 of that Act as amended, read in pertinent part:
"Art. 1269h. Airports, maintenance and operation
"Section 1. A—That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire, by purchase without condemnation or by purchase through condemnation proceedings, and thereafter maintain and operate as an airport, or lease, or sell, to the Federal Government, tracts of land either within or without the corporate limits of such city and within the county in which such city is situated, and the Commissioners' Court of any county may likewise acquire, maintain and operate for like purpose tracts of land within the limits of the county."
(Other subsections extend the geographical limits within which the power may be exercised.)
"Section 2. (a) For the purpose of condemning or purchasing, either or both, lands to be used and maintained as provided in Section 1 hereof, and improving and equipping the same for such use, the governing body of any city or the Commissioners Court of any county, falling within the terms of such Section, may issue negotiable bonds of the city or of the county, as the case may be, and levy taxes to provide for the interest and sinking funds so issued, the authority hereby given for the issuance of such bonds and levy and collection of such taxes to be exercised in accordance with the provisions of Chapter 1 of Title 22 of the Revised Civil Statutes of 1925.
"(b) * * * * *
"Section 3. * * * no City or County shall be liable for injuries to persons resulting from or caused by any defective, unsound or unsafe condition of any such airport, or any part thereof, or thing of any character therein or resulting from or caused by any negligence, want of skill, or lack of care on the part of any Governing Board or Commissioners Court, officer, agent, servant or employee or other person with reference to the construction, improvement, management, conduct, or maintenance of any such airport, or any structure, improvement or thing of any character whatever located therein or connected therewith."

The Act with which we are now concerned, Article 46d–15 (footnote 1, supra) was adopted in 1947, the same year in which Article 1269h was last amended. There was no need for Article 46d–15 to accomplish the purposes for which appellants contend that it was intended. Those purposes were already accomplished by Article 1269h. It is, of course, elementary that a statute should be so construed as to give it a field of operation and to make it an effective law. The legislature is never presumed to have done a vain thing in the enactment of a statute. See 50 Am.Jur., Statutes, Sections 357, 362. In the light of the then existing law, we can see no effective meaning to be given to Article 46d–15, other than that the designation of the functions therein as being public and governmental carried with it all of the consequences which such a designation entails, including exemption of the municipality from tort liability.

Appellants' third argument assumes the governmental nature of the operation of an airport under Article 46d–15, but urges that renting of space for the storage of airplanes is a business venture not included within the statute. The ordinance of the City of Sweetwater setting up the operation of the airport expressly stated that it was not the purpose of the City to enter into a business for profit.[5] When not primarily undertaken for profit, the charging of a fee by a municipal corporation does not affect the governmental nature of the activity. City of Midland v. Hamlin, Tex. Civ.App., 239 S.W.2d 159, 25 A.L.R.2d 1048; City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872; 38 Am.Jur., Municipal Corporations, Sec. 575, p. 271. It seems to us that the quartering of airplanes is a part of the airport operations and a governmental function within Article 46d–15.

To support their fourth and final argument, the appellants rely principally upon Christopher v. City of El Paso, supra, citing also the Annotation in 124 A.L.R. 350 on "Constitutionality of Statute Which Relieves Municipalities from Liability for Tort." In Stocker v. City of Nashville, 174 Tenn. 483, 126 S. W.2d 339, 341, 124 A.L.R. 345, the Christopher Case was distinguished as follows:

"We are cited to one case, decided by the Court of Civil Appeals of Texas, Christopher v. City of El Paso, 98 S.W.2d 394, 397, holding unconstitutional an exemption from liability to suit provision in a statute authorizing municipalities to acquire and maintain airports. Vernon's Tex.Ann.Civ.St.Art. 1269 h. But that statute differs from the one before us in the important particular that it contained no declaration as a predicate for the exemption from suit, as does the Tennessee statute, that the maintenance and operation of municipal airports is a public governmental function. What is said in that opinion and its citations indicates the importance of this difference."

It is clearly within the province of the legislature, when acting reasonably and not arbitrarily, to determine whether an act that may be performed by a city is public in its nature and performed as the agent of the state in furtherance of general law for the interest of the public at large and, hence, governmental. See Stocker v. City of Nashville, supra; 38 Am.Jur., Municipal Corporations, Sec. 574, p. 269, n. 5. When the function became governmental in its nature, the legal basis was furnished for the exemption of the municipality from liability for torts, indeed, that exemp-

5. "Section 2. Purpose. The Avenger Field Municipal Airport is not and shall not be conducted for profit, but as a governmental project, to foster and promote aeronautics as a public service to the United States Government and the people who reside in and nearby the City of Sweetwater, in accordance with the Declaration of Policy of the Civil Aeronautics Board in Section 402 of Chapter 9, Title 49, Civil Aeronautics Act of the United States, and as set forth in Section 15 of the Municipal Airports Act of the 50th Legislature of the State of Texas."

tion followed automatically from the nature of the function. The act was, therefore, not subject to the constitutional objections urged. See cases collected in Annotation 124 A.L.R. 350, 357; 38 Am.Jur., Municipal Corporations, Sec. 593.

It follows that the judgment of the district court was correct and that judgment is

Affirmed.