CITY OF CORSICANA V. JIMMY WREN ET AL.

No. A-6751. Decided October 29, 1958.
Rehearing overruled November 26, 1958.
(317 S.W. 2d Series 516)

*Wm. J. McKie* and *Johnny M. Chiraftis*, City Attorney, both of Corsicana, for petitioner, City of Corsicana.

The Court of Civil Appeals erred in holding unconstitutional a general law declaring the operation of airports by cities to be a public and governmental function. City of Port Arthur v. Wallace, 171 S.W. 2d 480; City of Fort Worth v. George, 108 S.W. 2d 929; Ostrom v. City of San Antonio, 94 Texas 523, 62 S.W. 909.

*Dawson & Dawson* and *Charles L. Price,* all of Corsicana, for respondents.

In reply cited Scroggins v. City of Harlingen, 131 Texas 237, 112 S.W. 2d 1035; City of Waco v. Branch, 117 Texas 394, 5 S.W. 2d 498; City of Fort Worth v. Wiggins, 5 S.W. 2d 761.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

For all practical purposes, this case may be said to present the single question of whether ownership and operation of an airport by a Home Rule City pursuant to Art. 46d-15, Vernon's Texas Civ. Stats., is a governmental function in the sense that renders the city immune from liability for negligence in burning grass on the airport premises, as a result of which certain property of the respondent-plaintiff there stored by him under contractual arrangement with the petitioner-defendant City was destroyed or damaged.

The Waco Court of Civil Appeals, in thoughtful opinions,

including one on rehearing, held against immunity, reversing accordingly a summary judgment of the trial court which had denied recovery on that ground. 309 S.W. 2d 102. Although conceding the question to be, like most disputes over city immunity, confusingly difficult, we have concluded to reverse the appellate judgment and affirm that of the trial court.

■ At the outset, the respondent-plaintiff contests our jurisdiction or right to reverse or even consider the case upon the broad ground presented by the petitioner City that city operation of airports is a governmental function. It is said that the Court of Civil Appeals rested its judgment also on other propositions, the contraries of which the City has not here formally asserted, to wit, (a) that the peculiar facts incident to the operation of this particular airport, such as the absence of scheduled commercial flights, render the operation nongovernmental regardless of what might be the result in the ordinary case, and (b) that in no event is the mere burning of grass governmental. We reject this contention.

The court's intent, if any, to rest its judgment alternatively on grounds (a) and (b) seems quite doubtful, especially since, as to (b), the trial court concluded the evidence to have established beyond question that the grass burning was incidental to maintenance of the airport, and this conclusion was not questioned by the respondent-plaintiff as appellant in the Court of Civil Appeals. In any event, the language of the latter court as a whole so closely involves the two mentioned propositions with its main proposition of municipal airport operation in general being proprietary, that we are reluctant to deny review of the case on its merits for the purely procedural reason advanced. The corresponding procedural rules are intended less as hard and fast limitations on the right of review than to avoid prejudice to the opposing party from confusion as to the issues for decision and to relieve busy courts of the responsibility of, in effect, briefing the case for one or both of the parties. If the two propositions mentioned actually do represent questions separate from the principal one, the respondent-plaintiff has obviously not suffered by omission of the petitioner City to make special points about them, nor have we ourselves been thereby embarrassed in our consideration of the case. Moreover, making the further assumption that these propositions were made separate grounds of decision by the appellate court, we find no difficulty in concluding that they are not well taken.

The airport in question was not less governmental because

of its unimportance as compared to busier ones of other cities, including the absence of scheduled air traffic. Obviously the City would welcome such traffic if and when the same should develop, and in the meantime it is doing what an airport owner and operator normally do under the circumstances.

The mere burning of grass, of course, has no governmental significance nor, for that matter, proprietary significance. The reason for doing it is what counts. It is not, and has not been, contended that there was a fact issue (precluding summary judgment) as to whether the burning was for maintenance purposes as the trial court said it was; and being for such purposes, it was certainly no less a part of airport operation than we have held the pruning of an ornamental shrub to be with reference to the operation of a public school. Braun v. Trustees of Victoria Independent School Dist., 114 S.W. 2d 947, Texas Civ. App., wr. of er. refused. Our decision in City of Houston v. Quinones, 142 Texas 282, 177 S.W. 2d 259, 261, does not purport to hold that the cutting of grass is *per se,* or even *prima facie,* a proprietary activity.

The real question in the case is argued from angles of common law, statutory law (Art. 46d-15, supra) and constitutional law.

Under common law, the majority of such states as have had occasion to pass on the matter hold operation of airports to be a proprietary function of the municipality concerned, with the consequence of liability for negligence. See cases collected in 138 A.L.R. 126; also Wendler v. City of Great Bend by the Supreme Court of Kansas, 181 Kans. 753, 316 P. 2d 265. However, while the number of courts so holding is impressive, it is yet not such as virtually to compel us to follow suit when meeting the question ourselves for the first time, as we now do. The only prior Texas decision dealing with the point is that of the El Paso Court of Civil Appeals in Christopher v. City of El Paso, 98 S.W. 2d 394, which did purport to align this state with the "proprietary" group. However, the actual decision went in favor of the city on the ground that the individual in charge of the airport had been found by the jury to be a lessee of the city rather than its agent, and accordingly our own action in declining to review the judgment for want of jurisdiction was not an approval of the rulings of the Court either as to city airport operation being a proprietary function or as to the further (and hereinafter considered) question of legislative power to permit exemption of liability for city negligence in airport op-

eration. We know of no later reference by this Court, favorable or otherwise, to these rulings of the Christopher case.

And whatever we might have been disposed to hold as a matter of mere reasoning from precedent and analogy and apart from statutes, the effect of Art. 46d-15, supra, must be considered. That provision, fully copied in the footnote,[1] forms part of the self-styled Municipal Airports Act, a "uniform" law adopted by Acts 1947, 50th Leg., Ch. 114, p. 183, and includes a specific statement that municipal airport maintenance and sundry other municipal activities concerning airports "are hereby declared to be public *and* governmental functions, exercised for a public purpose, and matters of public necessity." (Emphasis supplied.) The caption of the act uses the same words "public and governmental functions." The emergency clause includes a recital "that the public welfare will best be served by the passage of this Act."

Since the act followed the Christopher case, supra, by some ten years, it should be noted that the latter, in addition to declaring municipal airport operation to be proprietary, held to be unconstitutional (at least as to cities in contradistinction to counties) a portion of an earlier statute, to wit, Acts 1929, 41st Leg., 1st C. S., Ch. 83, p. 209 (Art. 1269h, Vernon's Texas Civ. Stats.), the general subject of that act being an authorization of city and county acquisition and operation of airports. The part declared unconstitutional was the provision of Sec. 3 reading:

"* * * and no city or county shall be liable for injuries to persons resulting from or caused by * * * any negligence, want of skill, or lack of care on the part of any governing Board or Commissioners' Court, officer, agent, servant or employee or other person with reference to the * * * management, conduct,

---

1.—"Sec. 15. The acquisition of any land or interest therein pursuant to this Act, the planning, acquisition, establishment, development, construction, improvement, *maintenance*, equipment, *operation*, regulation, protection and policing *of airports* and air navigation facilities, including the acquisition or elimination of airport hazards, and the exercise of any other powers herein granted to municipalities and other public agencies, to be severally or jointly exercised, *are hereby declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity;* and in the case of any county, are declared to be county functions and purposes as well as public and governmental; *and in the case of any municipality other than a county, are declared to be municipal functions and purposes as well as public and governmental.* All land and other property and privileges acquired and used by or on behalf of any municipality or other public agency in the manner and for the purposes enumerated in this Act shall and are hereby declared to be acquired and used for public and governmental purposes and as a matter of public necessity, and, in the case of a county or municipality, for county or municipal purposes, respectively." (Emphasis supplied.)

or maintenance of any such Airport * * * or thing of any character whatever, located therein or connected therewith."

The theory of this ruling was that, the activity in question being, in the Court's opinion, proprietary, the quoted statutory exemption from liability conflicted with Art. I, Sec. 13 of the State Constitution ("All courts shall be open, and every person for an injury done him, * * * shall have remedy by due course of law"), Art. I, Sec. 19 of the same (Due Process) and the 14th Amendment to the Constitution of the United States.

■ The federal cases cited by the El Paso Court in support of the last mentioned ground of decision seem at best of quite remote application, and, as an academic matter, one may question whether both Sections 13 and 19 of Art. I of our state constitution cover the same area of legislative authority to abolish causes of action. However, as we correctly stated in Lebohm v. City of Galveston, 154 Texas 192, 275 S.W. 2d 951, various prior decisions of this Court have held that, largely by virtue of Sec. 13, supra, even a home rule city cannot, by charter or ordinance, which is in effect the same as an act of the legislature, exempt itself from liability for causes of action that "are well established and well defined in the common law," for example, those arising from the construction and maintenance of streets. The Lebohm case stands for the proposition that, at least as regards a single city, the legislature itself is without power to exempt it from negligence liability in respect of streets, although we expressly disclaimed holding that a general provision applicable to all cities would be void.

Now obviously, as the review of our decisions in the Lebohm case will demonstrate, we have on occasion simultaneously (a) made an original classification of a particular activity as governmental and (b) accordingly denied legislative power to exempt the city from liability for exercise of the function thus classified. On the other hand, while the activity in question was thus novel in the sense that we ourselves had not theretofore classified it, it was not in any of these cases novel in the historical sense; and none of the mentioned decisions even purported to consider the specific question of whether the legislature had, with respect to an historically novel activity or even one not so novel, the power to classify it as governmental so as to permit of immunity for its exercise.

It has, indeed, been sometimes held, as in Rhodes v. City of Asheville, 230 N.C. 759, 53 S.E. 2d 313 (on rehearing) and

Brasier v. Cribbett, 166 Neb. 145, 88 N.W. 2d 235, and it is accordingly argued here, that this function of classification is exclusively one for courts. Presumably the argument would apply as much to a legislative declaration that a given activity is proprietary as to a declaration that it is governmental. But, one may well ask, why should it be so? Certainly neither Sec. 13, supra, nor any other constitutional provision, purports so to provide. To be sure, courts may adjudge that a horse is still a horse even when the legislature has called it a cow; but if science should produce some doubtful new animal resembling both, are judges necessarily better qualified than the legislature to say whether it is a horse or cow? The legislature is the repository of all Texas lawmaking power not otherwise assigned by the state or federal constitutions. Presumably its collective understanding of life and government is quite as broad as that of the courts, and certainly it has as much experience as they in evaluating the relative impact of a given municipal activity as between the general objects of government evidenced in the state or national sovereign and the narrower objects said to be peculiar to cities as limited groups of people. As regards a given activity, of which, by reason of its historical novelty and not easily appraised objects and effects, the legislative classification as governmental (or nongovernmental) cannot be called arbitrary or clearly at variance with "well established and well defined" law on the subject, the classification ought to be respected by the courts.

In Imperial Production Corp. v. Sweetwater, 210 Fed. 2d 917 (5th Cir.), a distinguished court, accustomed to dealing with Texas law questions, held for city immunity in a case substantially identical with the present and in so doing expressly sustained the constitutionality of the relevant provision of Art. 46d-15, supra, and relied upon it.[2] Kirksey v. City of Fort Smith, by the Supreme Court of Arkansas, 227 Ark. 630, 300 S.W. 2d 257, held to the same effect, looking to the legislature as an authorized spokesman of state policy in the matter of what is or is not governmental for tort immunity purposes. While the background of Arkansas decisions, as reviewed in that case, is evidently less hostile to city immunity generally than our own, the court's heavy reliance on the same sort of statutory declaration as Art. 46d-15, supra, is unequivocal. Van Gilder v. City of Morgantown, 136 W. Va., 831, 68 S.E. 2d 746,

2.—"It is clearly within the province of the legislature, when acting reasonably and not arbitrarily, to determine whether an act that may be performed by a city is public in its nature and performed as the agent of the state in furtherance of general law for the interest of the public at large and, hence, governmental." 210 Fed. 2d 917, 920.

is to the same effect, although conceding it to be somewhat weakened as authority here by the number of the dissents and by its reference to the fact of existing state regulation of aviation. Stocker v. City of Nashville, 174 Tenn. 483, 126 S.W. 2d 339, 124 A.L.R. 345, rested on a statute which expressly conferred governmental immunity on cities in the matter of airport operation, but in distinguishing the Christopher case, supra, and otherwise, clearly upheld and relied on the legislative classification of the activity in question as governmental. Since, no doubt, a purported delegation of state immunity implies or includes a legislative finding that the activity is governmental, the purport of the decision may well be that reflected by the language in Imperial Production Corp. v. Sweetwater, supra (see footnote 2) to the effect that the statute is valid if not arbitrary. See also Abbott v. City of Des Moines, 230 Iowa 494, 298 N.W. 649, 138 A.L.R. 120; Holland v. Western Airlines, 154 Fed. Supp., 457 (U.S.D.C., Montana).

■ We agree with the line of cases just referred to and find nothing unreasonable in either Art. 46d-15 or the earlier statute, Art. 1269h, Sec. 3. To that extent we decline to follow the Christopher case.

As suggested, aviation, with all the corresponding changes in civil and military conditions and relationships, is relatively novel. However familiar it may now appear, there are doubtless tens of millions of people still living, in whose youth the airplane did not even exist. Its progress from nothingness to its state of vast importance has been and continues to be, fantastically rapid.

Doubtless due to the very nature of avaiation, including its extraordinary speed and freedom of movement—so far less inhibited than any other form of conveyance and so replete with corresponding advantages and dangers, civil and military—its career has from the beginning been subject to governmental interest of one kind and another to a much greater and more accelerated degree than in the case of maritime or terrestrial types of locomotion.

Part of this extraordinary governmental intervention has been in the essential matter of providing airports—usually located at or near cities, in which nowadays, especially in Texas, the great bulk of the population lives.[3] No doubt airports, like

3.—See 1958 World Almanac, p. 264; 1958 Texas Almanac, pp. 91 et seq.

railroad terminals and ship wharves, could be, and in some instances are, run by private enterprise, even as, only a short time back, education was a strictly private affair and, further back, tax collection and military operations were sometimes farmed out by governments to private persons. But this does not mean that airport operation, when conducted by a city or other governmental entity, cannot be honestly classed as governmental, especially when we know that in our own state most or all important airports are municipally owned and operated. And it would seem that at least some significance is to be accorded the fact that the federal government has often, as in the instant case, in effect donated erstwhile military airports to cities.

The interest of government in airports may well be relatively much less one of local economic promotion than it is in the case of governmentally operated communications facilities generally. Public safety is more heavily involved—for the protection of both those who travel by, or engage in, aviation, and those on the ground who might be injured in person or property as a result of aviation; for safety in war as well as in peace. Within limits, it is probably true that the more airports we have, the safer are all the incidents of an air age, including even such indirect safety contributions as popular familiarity with aircraft which, in turn, tends to produce more and better aviation personnel and equipment for war and other public emergencies. Quite conceivably public ownership and operation of airports, whether by cities, counties, states or the nation, is a more rapid and orderly route to the various public objectives involved than private ownership and operation would be.

Obviously the fact that an airport is operated by a city, as distinguished from a county, state or the nation, does not of itself make it less governmental by nature than it might otherwise be. The fact that the sovereign immunity of a state or county is vastly broader than that of cities does not create a presumption against a given city activity being considered governmental.

The same factors that distinguish aviation from other forms of locomotion, civil and military, would seem sufficiently to support classifying municipal airport operation as governmental to the point that such a classification can hardly be called unreasonable. The same differences, historical and otherwise, also support the view that airport operation is not such a long and well established source of municipal liability as to be beyond the power of the legislature to decree that it does not exist.

For the reasons given the judgment of the Court of Civil Appeals is reversed and that of the trial court in favor of the petitioner-defendant City is affirmed.

Opinion delivered October 29, 1958.

MR. JUSTICE CALVERT, concurring.

I concur in the judgment entered. Because my approach to the main problem is not the same as that of the majority and my views on the subject discussed are not entirely in harmony with some of the reasoning in the majority opinion, I deem it proper to state briefly the basis of my concurrence.

Liability of the City of Corsicana for the negligent destruction of respondent's property requires a preliminary determination of the effect to be. given to the pertinent provisions of Articles 46d-15, Vernon's Annotated Texas Statutes. As pointed out in the majority opinion, Article 46d-15 declares the maintenance and operation of municipal airports to be a governmental function.

The courts of this state have long since laid down the rules for determining whether a particular municipal activity is governmental or proprietary. They are sometimes difficult to apply but they are easy to state. It is well settled that activities which are carried on by a municipality, pursuant to state requirement, in discharge of the state's obligation to provide for the health, safety or general welfare of the public generally, or which are voluntarily assumed for the benefit of the public generally rather than for the benefit of its own citizens, are performed in a governmental capacity and as a governmental function. City of Houston v. Quinones, 142 Texas 282, 177 S.W. 2d 259; City of Ft. Worth v. George, Texas Civ. App., 108 S.W. 2d 929, writ refused; Gartman v. City of McAllen, 130 Texas 237, 107 S.W. 2d 879; 30-B Texas Jur. 15, Municipal Corporations, Sec. 639. On the other hand, it is equally well settled that all other municipal activities are carried on in a private corporate capacity and are proprietary functions. Dilley v. City of Houston, 148 Texas 191, 222 S.W. 2d 992; City of Houston v. Quinones, supra; City of Houston v. Shilling, 150 Texas 387, 240 S.W. 2d 1010, 26 A.L.R. 2d 935.

Whether a particular municipal activity is performed as a governmental or proprietary function is a judicial and not a

legislative question. Rhodes v. City of Asheville, 230 N.C. 759, 53 S.E. 2d 313; Brasier v. Cribbett, 166 Neb. 145, 88 N.W. 2d 235. The courts have prescribed the legal tests for determining the governmental or proprietary character of municipal activities and only the courts may properly determine whether and how a given activity meets its own tests. We had an analogous situation before us in Texas Turnpike Co. v. Dallas County, 153 Texas 474, 271 S.W. 2d 400. In that case we had to decide whether property acquired by the Turnpike Company was "publicly owned" so as to be exempt from taxes under Section 9 of Article XI of the Constitution. By statute the Legislature had declared that "the equitable, beneficial and superior title to the property shall be vested at all times in the State of Texas and shall constitute public property used for public purposes * * *." We nevertheless held that the property was not "publicly owned" and said: "Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status based on facts, that may not be created or conferred by mere legislative, or even contractual declaration. If the state does not in fact own the taxable title to the property, neither the Legislature by statute, nor the petitioner and the authority by contract, may make the state the owner thereof by simply saying that it is the owner." 271 S.W. 2d 402. So here, the Legislature cannot declare a particular municipal activity, even a novel one, to be a governmental activity when it is clear that it is performed solely for the benefit of the local citizenship. On the other hand, when the nature of the activity is doubtful and its classification has not been determined by the judiciary, the spirit of harmony between the three branches of our government which is so essential to its existence requires that a classification made by the Legislature be given great weight by the courts.

As is pointed out in the majority opinion, municipal operation of airports has not heretofore been authoritatively classified by the judiciary of this state as either a governmental or a proprietary activity. The overwhelming majority of the courts of other states classify it as a proprietary activity. See cases annotated in 138 A.L.R. 126, et seq. Some courts compare municipal operation of airports to municipal operation of wharves. Dysart v. St. Louis, 321 Mo. 514, 11 S.W. 2d 1045, 62 A.L.R. 762; Coleman v. Oakland, 110 Cal. App. 715, 295 Pac. 59. It would be difficult, indeed, as respondent suggests, to distinguish between municipal operation of airports and municipal operation of wharves or railway and bus depots. But it is unnecessary for us to decide what weight or effect we would give to a legislative act classifying municipal operation of wharves or railway and

bus depots as governmental activities, and it is accordingly unnecessary to attempt the distinction.

If the question had reached us before the enactment of Art. 46d-15, the decisions of other state courts of last resort would be most persuasive with me, particularly since they are in harmony with our declared policy of refusing to extend the doctrine of municipal immunity from liability for torts. City of Houston v. Shilling, 150 Texas 387, 240 S.W. 2d 1010, 1012; City of Austin v. Schemedes, 154 Texas 416, 279 S.W. 2d 326, 329. On the other hand, I can see a far greater benefit to the public generally from the erection, operation and maintenance of airports than from the operation and maintenance of streets, power plants, waterworks, storm sewers, etc., which are classic examples of activities primarily performed for the benefit of the local citizenship. City of Galveston v. Posnainsky, 62 Texas 118; Greenville v. Pitts, 102 Texas 1, 107 S.W. 50, 14 L.R.A. N.S. 979; City of Wichita Falls v. Lipscomb, Texas Civ. App., 50 S.W. 2d 867; writ refused; Dilley v. City of Houston, supra.

Airports, whether large enough to accommodate the tremendous airliners, transporting vast numbers of passengers all over the globe, which touch the ground only briefly at our cities to receive and discharge passengers and gather fuel, or only large enough to accommodate private planes transporting two or three people, undoubtedly serve the general welfare of a great segment of the public not resident at their sites. I cannot say that municipal airports are erected, operated and maintained solely, or even primarily, for the benefit of local inhabitants, or even that they are not operated and maintained primarily for the benefit of the public generally, and I am therefore inclined to give controlling weight to the legislative classification and hold municipal operation and maintenance of airports to be a governmental activity, performed as a governmental function. It is well settled that a city is not liable for injuries resulting from the negligence of its employees while engaged in work in furtherance of a governmental function. City of Wichita Falls v. Robison, 121 Texas 133, 46 S.W. 2d 965; 30-B Texas Jur. 9, Municipal Corporations, Sec. 837. The provisions of Section 3 of Art. 1269h are therefore immaterial to a decision of the case, and Lebohm v. City of Galveston, 154 Texas 192, 275 S.W. 2d 951 has no pertinency.

For the reasons stated I agree to the judgment entered.

Opinion delivered October 29, 1958.

MR. JUSTICE GREENHILL, joined by JUSTICES SMITH and WALKER, dissenting.

Both the majority and the concurring opinions recognize that the case turns upon whether the maintenance and operation of the Corsicana airport, including the rental of space for the storage of aircraft and the burning of weeds, constitutes a governmental function. If it does not, Mr. Wren and others are entitled to a trial on the merits of their case; and if the city is found to be at fault, it will be liable to them.

The problem here resolves itself into three questions:

1. Who is to determine whether the function is governmental? Is the question a legislative or a judicial one?

2. If the question is a judicial one, what is the law, in the absence of a legislative declaration, as to whether municipal operation of an airport is a governmental function?

3. If the question is a judicial one, what weight shall be given the legislative declaration?

The majority, in effect, holds that the determination here is essentially a legislative matter with which the courts will not interfere unless the power is wrongfully exercised. The concurring opinion would hold that the question is a judicial one; that the judicial question here is a close one; and that the legislative declaration tips the scales in favor of a judicial determination that the function being performed is governmental. I agree with the concurring opinion that the question is a judicial one. But in view of what I regard as the weight of authority as applied to the particular facts here, the legislative declaration is not sufficient to change the nature of the function from proprietary to governmental.

The first of the above questions is whether the determination of the question at issue is legislative or judicial.

The North Carolina Supreme Court recently had this question before it. The fact situation was comparable, and the statute involved was the same. The Court held:

"Unquestionably the Legislature intended to declare that the operation of the Asheville-Hendersonville Airport should be deemed and held to be in furtherance of a governmental function. But the mere legislative declaration to that effect did not

make it so, for that is a judicial and not a legislative question. * * * "[1]

More recently, the Supreme Court of Nebraska was called upon to decide the question, having before it a similar airport situation and statute. It likewise held:

"We conclude that the distinction between a governmental and a proprietary function of a municipal corporation is a judicial and not a legislative question, and the legislative declaration as to the nature of the authority delegated by the statute is not controlling. * * * "[2]

As pointed out in the concurring opinion, this Court held in the Texas Turnpike case that whether property was "publicly owned" is a judicial question. If the turnpike properties were publicly owned, they were exempt from taxation. The Legislature declared that they were "public property used for public purposes." This Court concluded that under the facts they were not and held that they were subject to taxation. It was there held that:

"* * * * Public ownership, for tax-exemption purposes, must grow out of the facts; it is a legal status, based on facts, that may not be created or conferred by mere legislative * * * declaration."[3]

To hold that the question is legislative leads to very serious constitutional questions. There have been several attempts by the Legislature to grant immunity to municipalities. This Court and others have held many of such acts to be unconstitutional.

The Act now before the Court, Article 46d, Section 13, does not purport expressly to grant immunity to cities from tort liability. It states that the procurement of land by eminent domain and the maintenance of an airport is a governmental function,—and goes no further.

An earlier Texas airport statute did expressly purport to exempt cities from liability for negligence in the operation of an airport.[4] The El Paso Court of Civil Appeals held that statute

---

1.—*Rhodes v. City of Asheville*, 1949, 230 N.C. 759, 53 S.E. 2d 313.

2.—*Brasier v. Cribbett*, 1958, 166 Neb. 145, 88 N.W. 2d 235, at 245.

3.—*Texas Turnpike Co. v. Dallas County*, 1954, 153 Texas 474, 271 S.W. 2d 400, at 402.

4.—Art. 1269h V.A.C.S.

to be unconstitutional.[5] The majority expressly declines to follow that opinion, and in effect, overrules it on this point. But there are other opinions by this Court which strike down legislative declarations of immunity under the provisions of the Due Processes Clauses and under Section 13 of Article I of the Texas Bill of Rights that:

"* * * every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

The cases say that if a right or remedy existed at common law, the legislature cannot absolutely abolish that cause of action and deprive the citizen of his right or remedy.[6] The Workmen's Compensation Act was upheld though it took away the workman's common law action for negligence. But the Act gave him an alternative remedy.[7]

This Court in the *Lebohm* case held invalid a part of the Galveston city charter which purported to exempt it from tort liability in the operation of its local city streets even though the Legislature expressly authorized it.[8] In 1914, the Legislature authorized home rule cities "to provide for exemption from liability on account of any claim for damages. * * * " The Act was declared unconstitutional. The Commission of Appeals there held that:

"* * * * The Legislature itself is powerless to destroy directly by statute the rights which the city ordinance purports to wipe out, and the Legislature is equally powerless to authorize the city to destroy such rights."[9]

By another statute, the Texas Legislature attempted to grant cities immunity from liability in the operation of its parks. The Act was likewise declared unconstitutional.[10]

5.—*Christopher v. City of El Paso*, 1936, 98 S.W. 2d 394, writ dismissed.

6.—*Clem v. Evans*, (Texas Com. App. 1927), 291 S.W. 871, 51 A.L.R. 1135.

7.—*Middleton v. Texas Power & Light Co.*, 1916, 108 Texas 96, 185 S.W. 556. Compare the opinion of this Court on rehearing in *Lebohm v. City of Galveston*, 1955, 154 Texas 192, 275 S.W. 2d 951, at 953.

8.—Supra, note 7.

9.—*City of Amarillo v. Tutor*, 1924, 267 S.W. 697, at 699, followed by *Hanks v. City of Port Arthur*, 121 Texas 202, 48 S.W. 2d 944, 83 A.L.R. 278.

10.—*Claitor v. City of Comanche*, 1954, 271 S.W. 2d 465, no writ history, noted 7 Baylor Law Review 326.

If the determination of the function, whether it is governmental or proprietary, is held to be a judicial question, these constitutional issues do not arise in this case. At stated, the Legislature in Article 46d has not attempted expressly to legislate immunity. It simply has expressed itself that the function is governmental. That is, in my opinion a judicial question.

The second of the questions above posed is: Assuming the question to be a judicial one, what is the law, in the absence of a legislative declaration, as to whether the operation of an airport is a governmental function?

It seems to me that the weight of authority holds that the function is proprietary.

The rule is stated in 18 McQuillin on Municipal Corporations (3rd ed. 1950) at page 406:

"Although some cases hold that it is a governmental function, the prevailing view is that the operation and maintenance of an airport is a proprietary function, in the performance of which a city may be held liable for the negligence of its agents, the same as a private corporation."

The annotator in 120 A.L.R. 1379 says:

"It may be laid down as a general rule that, in its operation of an airport owned by it, a municipal corporation acts in a proprietary * * * capacity, and hence is liable for its torts * * * * " See also Annotation 138 A.L.R. 126.

Fixel in his text on *The Law of Aviation* (3rd ed. 1948) states at page 198:

"The weight of authority is to the effect that in the operation of an airport by a municipality, it acts in a proprietary capacity distinguished from exercising government functions."

Lupton finds the rule to be the same in his work on *Civil Aviation Law* (page 99). See also Rhyne, *Aviation Accident Law* (1947), 149 et seq. The cases are cited by these authorities. Others are mentioned in the note below.[11]

---

11.—A recent law review concludes that, "Based upon this examination of the decided cases (including decisions made in the light of statutes), it appears that the large weight of authority holds that the operation, construction, and maintenance of an airport by a municipality constitutes a proprietary function; and as

The holding of the weight of authority that the function is in harmony with Texas cases involving similar municipal functions. In the field of automotive transportation, this Court recently adhered to its long-established holding that the building and maintenance of streets by a city is a proprietary function.[12] Even more recently this Court followed prior holdings that the improvement of city streets is a proprietary function.[13]

It is held that the maintenance of docks and docking facilities by cities for sea transportation is the exercise of a proprietary function.[14] No cases are cited and none has been found which extends immunity from liability to any municipally owned railroad or bus stations.

These cases involving transportation are consistent with the holdings in others on related functions of municipalities. Thus this Court has held or approved holdings that a city is not immune from liability in its maintenance or operation of a water system,[15] public park,[16] storm sewer,[17] or in its repair of garbage trucks.[18] It therefore appears to me that but for the legislative declaration, we would hold that the function was proprietary.

This brings us to the third question: what weight should be given to the legislative declaration that the function is governmental?

The declaration of the Legislature is, of course, entitled to respect and serious consideration. But assuming that the rule would be, in the absence of a declaration, that the function is proprietary, the declaration itself is not of sufficient weight to change the function at the Corsicana airport from proprietary to governmental.

---

such, the municipality is liable for the torts of its agents, officers, or employees." *Insurance Law Journal*, May 1958, at page 303.

For a recent case with a detailed discussion and citation of prior cases see Wendler v. City of Great Bend, 181 Kan. 753, 316 P. 2d 265 (1957).

---

12.—*Lebohm v. City of Galveston*, 1955, 154 Texas, 192, 275 S.W. 2d 951; noted 33 Texas Law Rev. 1099.

13.—*City of Austin v. Schmedes*, 1955, 154 Texas 416, 279 S.W. 2d 326; noted 34 Texas Law Rev. 144.

14.—63 C.J.S., Municipal Corporations, Sec. 911a, page 326.

15.—*City of Wichita Falls v. Lipscomb*, 1932, 50 S.W. 2d 867, writ refused.

16.—*City of Waco v. Branch*, 1928, 117 Texas 394, 5 S.W. 2d 498.

17.—*Dilley v. City of Houston*, 1949, 148 Texas 191, 222 S.W. 2d 992.

18.—*City of Houston v. Schilling*, 1951, 150 Texas 387, 240 S.W. 2d 1010.

In judicially determining whether a function is governmental, a large number of·factors have been considered. The legislative declaration is another factor to be included in the calculations. But in the light of the decided cases on the maintenance of airports, on other forms of transportation, and on related functions, it is not, in my opinion, decisive. This seems to be particularly true in the light of the modest operations at the Corsicana airport.

The appellate courts of several other states which have this same statute have held, for various reasons, that it does not confer upon cities an immunity from tort liability. These states are North Carolina,[19] Iowa,[20] Nevada,[21] Oklahoma,[22] Georgia,[23] and Nebraska.[24] It seems to me that they represent the majority and the better view. There are cases to the contrary: *Van Gilder v. City of Morgantown,* 1949, 136 W. Va. 831 68 S.E. 2d 746; *Kirksey v. City of Ft. Smith,* 1957, 227 Ark. 630, 300 S.W. 2d 257; *Imperial Production Corp. v. Sweetwater,* 1954, 210 Fed. 2d 917.

During this year, the Supreme Court of Nebraska pronounced what to me is the correct rule in view of the case law previously discussed. After determining that notwithstanding the statute, the question was a judicial one, it concluded.

"* * * in the light of the great weight of authority of the courts of this country that have passed upon the question, the City * * * was performing a proprietary function in the operation of its municipal airport. * * *."[26]

This is not to hold that a function which has once been declared to be proprietary cannot become governmental. But if

19.—*Rhodes v. City of Asheville,* 1949, 230 N.C. 134, 52 S.E. 2d 371, reh. denied, 230 N.C. 759, 53 S.E. 2d 313, where plaintiff's intestate was shot at the airport as a result of negligence.

20.—*Brown v. Sioux City,* 1951, 242 Ia. 1196, 49 N.W. 2d 853, where the spraying of the apron of the runway killed the plaintiff's bees, the plaintiff being a tenant of the city at the airport. The Iowa court indicated that some other functions of the airport would be governmental.

21.—*Granite Oil Securities v. Douglas County,* 1950, 67 Nev. 388, 219 Pac. 2d 191, 16 A.L.R. 2d 1069, where planes were destroyed by fire.

22.—*Ex Parte Houston,* 1950, 93 Okla. Cr. 26, 224 Pac. 2d 281, regarding regulations of airport limousines and taxis at the airport.

23.—*Caroway v. City of Atlanta,* 1952, 85 Ga. App. 792, 70 S.E. 2d 126, involving a "slip and fall" case in the airport waiting room.

24.—*Brasier v. Cribbett,* 1958, 166 Neb. 145, 88 N.W. 2d 235, where a city employee left an obstruction on the runway.

25.—*Brasier v. Cribbett,* 1958, 166 Neb. 145, 88 N.W. 2d 235, at 245.

the functions do become governmental, they will do so because of the nature of the operations themselves. Such a changed situation is not presented, in my opinion, by the facts and circumstances of this case.

The majority sees a need for governmental regulation of air traffic. I would agree. The regulation of traffic over city streets is a governmnetal function. But this Court has held that the maintenance of the streets themselves is a proprietary function.[26]

I would affirm the judgment of the Court of Civil Appeals.

Opinion delivered November 5, 1958.

Rehearing overruled Nov. 26, 1958.

---

26.—See cases cited supra, notes 12 and 13.