

# THE ATTORNEY GENERAL
## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

April 28, 1969

Honorable Cecil M. Pruett
County Attorney
Hutchinson County
Borger, Texas   79007

Opinion No. M-380

Re:   Power of county to require
      utility companies to relocate
      poles and lines on public rights-
      of-way under Municipal Airports
      Act.

Dear Mr. Pruett:

Your request for opinion presents the following question:

"Does Hutchinson County have the power to require South-
western Public Service Company, a corporation engaged in
the transmission and sale of electrical energy in Texas,
and Southwestern Bell Telephone Company, a corporation en-
gaged in local and long distance telephone service, to re-
locate their poles and lines without expense to the County
in connection with the County's program of expanding its
airport facilities in order that such lines located on a
public road and State Highway in the city of Borger and
Hutchinson County will not constitute a hazard to air-
planes taking off and landing upon the expanded runways
of the airport?"

In support of your request, you relate the following facts:

"The air approach to and from one of the expanded run-
ways passed over a traffic circle in the City of Borger
and a State Highway traversing along such traffic circle,
along with other streets in the City of Borger ...   The
lines in question were partially in and partially out of
the City of Borger.  A portion of the lines of each com-
pany had been obtained by private easement from private
parties before the roads or highways were established.
Hutchinson County was the governmental agency which owned,
maintained and had charge of the construction of the air-
port, as well as the facilities involved in the expansion
program.  It alone requested the relocation and removal
of the lines."

It also is made to appear that the poles and lines in question existed
before the airport expansion and that they apparently did not con-

-1878-

stitute an airport hazard prior to the expansion. Despite these considerations, however, it is the opinion of this office that Hutchinson County may require the relocation of the utility poles and lines located upon city streets, state highways, and county roads without expense to the county subject to the qualification hereinafter set out except that the county may not do so in those situations where the poles and lines are located on private easements, obtained from private parties before the roads or highways were established, and which easements have not heretofore been purchased or taken by eminent domain by the state or county.

The power of the county to compel the removal of an "airport hazard" is set forth in the Municipal Airports Act, Articles 46d-1 through 46d-22, Vernon's Civil Statutes. In Article 46d-1, a "municipality" is defined as including a "county". Article 46d-2 provides that:

"Every municipality is authorized, ... to ... regulate, protect and police airports and air navigation facilities, either within or without the territorial limits of such municipality ... For such purposes the municipality ... may, by purchase, gift, devise, lease, eminent domain proceedings or otherwise, acquire property, real or personal or any interest therein including easements in airport hazards or land outside the boundaries of an airport site, as are necessary to permit safe and efficient operation of the airport or to permit the removal, elimination, obstruction -- marking of obstruction -- lighting of airport hazards or to prevent the establishment of airport hazards." (Emphasis added.)

Article 46d-15 provides that:

"The ... regulation, protection and policing of airports and air navigation facilities, including the acquisition or elimination of airport hazards, and the exercise of any other powers herein granted to municipalities and other public agencies, ... are hereby declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity; and in the case of any county, are declared to be county functions and purposes as well as public and governmental; ... " (Emphasis added.)

Not only does the above statute render the operation of the airport a public and governmental function; it was so held in the case of City of Corsicana vs. Wren, 159 Tex. 202, 317 S.W.2d 516 (1958). A county is possessed of police powers and may reasonably exercise the same in its proper jurisdiction. 20 C.J.S. 869, Counties, Sec. 92. By the reasonable exercise of its police power, it possessed the power to require the necessary utility relocations.

As to the installations located on easements procured from private parties, and which easements have not been subsequently acquired by the State as a part of the public rights-of-way, the corporations in question are clearly entitled to relocation compensation. McLennan County v. Sinclair Pipeline Company, 323 S.W.2d 471 (Tex.Civ. App. 1959, error ref., n.r.e.), Panhandle Company v. Highway Commission, 297 US 613 (1939). However, a material distinction exists between that situation and the one here presented, involving installations located in the highway and street rights-of-way, the same being regulated by statute and subject to the reasonable exercise of the police power, an inherent sovereign power. cf. Attorney General Opinion Nos. WW-1090 (1961) WW-961 (1960), and WW-1004 (1961).

It also should be here observed that a right of easement only is involved, and a material distinction must be drawn as to the nature of the property right involved, between the mere right of an easement for utility lines, and a compensable vested property right arising under a franchise, which is a grant and a contractual right. 25 Tex.Jur.2d 599, Franchises, Sec. 1; p. 600, Sec. 2.

The right of the telephone company to use highway and road rights-of-way has been conditioned by Article 1416, Vernon's Civil Statutes, reading as follows:

"Corporations created for the purpose of constructing and maintaining magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters." (Emphasis added.)

The right of the electric utility company to the use of such rights-of-way has been conditioned by Article 1436a, Vernon's Civil Statutes, reading, in part, as follows:

"Corporations ... engaged in the generation, transmission and/or the distribution of electric energy in Texas ... shall have the right to erect, construct, maintain and operate lines over, under, across, upon and along any State highway or county road in this State, except within the limits of an incorporated city or town; ... and to erect, maintain and operate lines over, across and along the streets, alleys and other public property in any incorporated city or town in this State, with the consent and under the direction of the governing body of such city or town ... Any such corporation shall notify the State Highway Commission, or the Commissioners Court having jurisdiction, as the case may be, when it proposes to build lines along the right-of-way of any State Highway, or county road, outside the limits of an incorporated city or town,

whereupon the Highway Commission, or the Commissioners Court, may, if it so desires, designate the place along the right-of-way where such lines shall be constructed. The public agency having jurisdiction or control of a highway or county road, ... <u>may require any such corporation, at its own expense, to relocate its lines on a State highway or county road outside the limits of an incorporated city or town, so as to permit the widening of the right-of-way, changing of traffic lanes, improvement of the road bed, or improvement of drainage ditches located on such right-of-way by giving thirty (30) days' written notice to such corporation and specifying the line or lines to be moved, and indicating the place on the new right-of-way where such line or lines may be placed</u> ... and the governing body of such city or town may require any such corporation, at its own expense, to re-locate its poles and lines so as to permit the widening or straightening of streets, by giving to such corporation thirty (30) days' notice and specifying the new location for such poles and lines along the right-of-way of such street or streets." (Emphasis added.)

Obviously, the corporations in question may be compelled to remove at their own expense their installations located in public rights-of-way whenever such location is made necessary by highway improvements. While sustaining the constitutionality of a statute authorizing compensation involving relocation of interstate highways, the Supreme Court of Texas in <u>State of Texas</u> v. <u>City of Austin</u>, 331 S.W.2d 737 (Tex. Sup. 1960) has clearly recognized that the companies could be forced to remove their lines, because of highway improvements, at their own expense <u>in the absence of an "assumption" by the state of the expense</u>. The Court said:

". . . While public utilities may use the same /roads and streets/ for laying their lines, such use is subject to reasonable regulation by either the state, the county or the city, as the case may be. The utility may always be required, in the valid exercise of the police power by proper governmental authority, to remove or adjust its installations to meet the needs of the public for travel and transportation.

". . . The Legislature acting for the State has primary and plenary power to control and regulate public roads and streets. It may delegate that power to counties or municipal corporations." 331 S.W.2d 741.

In reaching the conclusion that in the absence of a statute assuming liability for compensation, Texas will adhere to the common law rule, the Court further declared:

"Compensation is not required to be made for damage or
loss resulting from a valid exercise of the police power.
See State v. Richards, 157 Tex. 166, 301 S.W.2d 597,
and authorities there cited. The absence of a cause of
action does not, however, reduce the loss which indivi-
duals are often required to bear or make their injuries
any less real ..." 331 S.W.2d 743.

In addition to the above authority, we believe that the City of San
Antonio v. United Gas Pipeline Company, 388 S.W.2d 231 (Tex.Civ.App.
1965, error ref., n.r.e.) and City of San Antonio v. Bexar Metro-
politan Water Dist., 309 S.W.2d 491 (Tex.Civ.App. 1958, error ref.)
also support the power to require the relocation in order to support
public surface and air travel on or above highways.

Thus, even without statutes, such as our Articles 1436a and 1416,
involving relocations for highway purposes, the common law which Texas
has adopted leave the utility companies in the same position of having
to bear the relocation costs. Attorney General Opinion No. WW 45
(1957), citing numerous authorities, including Southern Bell Tel. &
Tel. Co. v. Commonwealth, 266 S.W.2d 308, 310-311 (Ky. 1954), in
which the Court said:

"Aside from the express provisions of the grant, we think
there is a clearly implied condition that appellant may
be required to remove and relocate its facilities when
such removal and relocation are in the interest of public
convenience or safety ... "

Numerous authorities from throughout the country are there cited in
support of the statement.

In Texas, Articles 1016, 1146, and 1175, Vernon's Civil Statutes,
grant to the cities the control and the police power over the
streets within their boundaries. Articles 6674w-1 and 6674w-5,
Vernon's Civil Statutes, grant to the Highway Commission such
power over State Highways within or outside the limits of any such
city, and the exercise of such power qualifies and renders
inexclusive the dominion of any city with respect to specific
streets, alleys or other public ways thereby affected. State v.
City of Austin, supra, at page 741.

We see no difference in whether the relocating of these facilities
was occasioned by road improvements or by airport improvements,
both being governmental functions of the county (as distinguished
from proprietary) and a valid exercise of the police power of
such county with no question of paramount rights involved. In
Attorney General's Opinion No. 0-2978 (1941), this office expressed
such opinion in regard to electric power poles and lines some

eight years prior to the original passage of Article 1436a
(Acts 1949, 51st Leg., p. 427, ch. 228).

We find no statute similar to Article 6674w-4, applicable
here, that would require the payment by all counties in this
state of the expenses incurred in the relocating of utility
poles and lines, occasioned by a valid exercise of the police
power under the Municipal Airports Act.

It is the understanding of this office that the Federal
Aviation Administration has taken the position that unless the
State law requires the county to pay for these relocating ex-
penses that matching federal funds are not available under 49
U.S.C. 1112 (a) (1) as "a necessary cost incurred," because it
is not <u>necessary</u> to pay for that for which you do not have to **pay.**

Likewise, the portion of Article 46d-2, hereinbefore
quoted, authorizing the purchase of such easements or other
interests "as are necessary", could hardly be authorizing, **much**
less requiring, the expenditure of funds for such relocating
when, under the existing law of this state, they may be **required**
to be removed in the valid exercise of the police power without
expense to the county.

In view of the foregoing, we are unable to construe
Articles 1416 and 1436a in such a way as to form some sort of
contract, whereby the utility companies derive a vested property
right in the placing of their poles and lines, so that if they
later incommode the public in other ways than highway improve-
ments incident to surface travel, the county or state is
absolutely required to compensate such utility companies for
removal costs. We find no ambiguity in the statutes to require
a resort to construction. These statutes merely are an expres-
sion of the public policy of the state as it existed at the
time of their adoption. <u>State v. City of Austin</u>, supra, at
page 741. The enumeration of the purposes, above quoted, in
Article 1436a would not exclude all other purposes or reasons
requiring relocation under the expressio unis rule of statu-
tory construction. This rule is only applied where because of
ambiguity such a canon of construction becomes necessary to
enable a court to determine the intention of the legislature.
It is not applicable where the legislative intention is dis-
closed by the entire act, or when its application will not aid
the court in ascertaining and giving effect to the legislative
intent, as in the situation presented here. 53 Tex.Jur.2d
206-208, Statutes, Sec. 142.

We cannot, by construction of the statutes in question,
hold that the state legislature intended by implication to

contract away the police power of the state or its political subdivisions. City of Garland v. Texas Power and Light Co., 342 S.W. 2d 816, 820 (Tex. Civ. App. 1961, no writ), from which we quote, in part:

> ". . . We recognize that 'the grant by a munici- pality to a public service company of the right to use streets does not divest the municipality of its police power over the grantee in relation to its use of such streets.' 12 McQuillin, Municipal Corporations, Fran- chises, §34.74. However, 'it is elementary that an exercise of the police power, in order to be valid, must be reasonable; unreasonable regulations cannot be sustained under the power.' 12 McQuillin, Muni- cipal Corporations, Franchises, §34.75. Nor can the police power be used by the city to deprive the fran- chise holder of any essential rights and privileges acquired thereunder. Northwestern Telegraph Exchange Co. v. City of Minneapolis, 81 Minn. 140. 83 N.W. 527, 86 N.W. 69, 53 L.R.A. 175."

We conclude that Articles 1416 and 1436a merely set out a limited authorization to place these utility lines on the rights-of-way and cannot be construed to limit the police power of the state, county, or municipality. Article 46d-1(c) and Article 46e-1 define an "Airport hazard" as any structure which obstructs airspace. Article 46d-15 provides that the elimination of airport hazards are public and governmental functions. Article 46e-2 declares an airport hazard to be a public nuisance and their prevention "should be accomplished, to the extent legally possible, by exercise of the police power, without compensation."

It does not appear from the facts furnished just where, under Article 1436a, the county indicated "the place on the right-of-way where such line or lines may be placed." As- suming that this statutory provision was followed, we hold that the removal requirement was a reasonable exercise of the police power, and the utility companies must bear the cost of relocation of their lines. On the other hand, if the utility companies were not afforded such a new location, then such removal requirement might constitute an unreasonable ex- ercise of the police power, and, if so, the county would be liable to pay the cost of removing the lines and poles of the utility companies.

## SUMMARY

Under the facts submitted, Hutchinson County has the power to require the relocation of telephone and utility poles and lines constituting "airport

> hazards," and the necessary and
> reasonable cost of relocation is
> not required to be borne by the
> County.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by

Houghton Brownlee, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman

Roger Tyler
Monroe Clayton
Woodrow Curtis
Bob Crouch
Dyer Moore, Jr.
Louis Neumann

W. V. Geppert
Staff Legal Assistant

Hawthorne Phillips
Executive Assistant